**Charles Thomas Shea v. Mary Oliver Metcalf**

[712 A.2d 887]

No. 97-015

Present: Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.

Opinion Filed April 3, 1998

*Lucy T. Brown* and *Dennis R. Pearson* of *Gravel and Shea,* and *Lindsey M. Huddle*, Burlington, for Plaintiff-Appellee.

496

*Susan M. Murray* of *Langrock Sperry & Wool,* Middlebury, for Defendant-Appellant.

**Amestoy, C.J.** Mary Metcalf appeals an Addison Family Court divorce order in which legal rights and responsibilities for her two minor children were divided between herself and her former husband, Charles Shea. The family court granted legal responsibility for decisions concerning the children's medical care and education to father, and legal responsibility for all other matters to mother. Mother contends that (1) the family court's order divides legal rights and responsibilities in a manner not permitted under 15 V.S.A. § 665(a), and (2) even if the statute authorizes such division, the family court abused its discretion in ordering the division and not awarding all legal rights and responsibilities to her. We affirm.

The parties were married in Vermont in 1988 and have two children, aged seven and five at the time of final hearing before the family court. Early in their marriage, the parties researched and discussed different approaches to parenting in such areas as the duration of nursing, whether the children should sleep with their parents in a "family bed" or in their own rooms, whether the children should be immunized, and whether they should attend public school or be home schooled. Mother's research led her to believe that the health risks associated with immunizing children against infectious diseases such as diphtheria, whooping cough, polio, measles and mumps outweighed the benefits. The parties thus agreed to forego immunizing their children.[1] Although father initially agreed to this decision, he later developed misgivings and changed his mind.

The parties also decided to educate their children at home, with instruction and supervision provided by mother, rather than send them to public school. Father initially agreed to this decision, but after the eldest child had been home schooled for approximately two years, changed his mind and decided that the children's needs would be better served by attending public school.

In seeking a divorce, the parties were able to settle all issues relating to spousal and child support and property division. The parties also agreed that mother would continue as the primary custodian with primary physical responsibilities for the two children. The sole dispute before the family court centered on assignment of legal rights and responsibilities for the children. Father sought sole

---

[1] The parties decided to make an exception and immunize the children against tetanus because they perceived the benefits to outweigh the risks.

legal rights and responsibilities over decisions concerning the children's medical care and education. Mother sought legal rights and responsibilities for all matters. The central area of dispute concerning legal custody was the parties' differences over medical and educational decisions for the children.

The family court heard testimony from the parties and several medical and education experts. From its consideration of testimony on childhood immunizations, the family court found that the prevailing medical regimen of childhood immunizations "is rational and represents the best-informed judgment" to protect the heath of the children. The court also found that father was the parent most likely to make sound medical and health care decisions generally for the children, and accordingly, awarded legal rights and responsibilities for medical decisions to father.

On educational matters, the court found that the parties' eldest son, who was at that time their only child of school age, had not been well served by home schooling with mother. The court found that the child could not read even basic words despite the fact that he was of second grade age, and it was normal for children to begin reading at an earlier age. The court also found that mother's home schooling was not affording the child enough interaction with peers. Because of mother's ineffective home schooling, and her insistence that she would continue to home school the children if given authority over the decision, the court awarded father legal rights and responsibilities for the children's educational decisions. Mother appeals.

Mother first argues that the family court was without statutory authority to divide legal rights and responsibilities between the two parents. She acknowledges that 15 V.S.A. § 665(a) generally permits such division, but contends that when the parties cannot agree, the statute requires that all legal rights and responsibilities be awarded to one parent.

█ When adjudicating the divorce of a couple with one or more minor children, the family court must assign parental rights and responsibilities for the child or children to one or both of the parents, or a suitable third party. See 15 V.S.A. § 665(a). Parental rights and responsibilities are defined as those "rights and responsibilities related to a child's physical living arrangements, parent child contact, education, medical and dental care, religion, travel and any other matter involving a child's welfare and upbringing." *Id.* § 664(1). Rights and responsibilities are comprised of "physical responsibility," and "legal responsibility," which is defined as "the rights and respon-

sibilities to determine and control various matters affecting a child's welfare . . . includ[ing] but . . . not limited to education, medical and dental care, religion and travel arrangements." *Id.* § 664(1)(A). The family court may "order parental rights and responsibilities *to be divided or shared* between the parents on such terms and conditions as serve the best interests of the child." *Id.* § 665(a) (emphasis added). Mother argues that the family court's order violates the statute's requirement that "[w]hen the parents *cannot agree to divide or share* parental rights and responsibilities, the court shall award parental rights and responsibilities *primarily or solely to one parent.*" *Id.* § 665(a) (emphasis added).

■ Our paramount goal in statutory construction is to give effect to the Legislature's intent. See *Burlington Elec. Dep't v. Vermont Dep't of Taxes*, 154 Vt. 332, 335, 576 A.2d 450, 452 (1990). We apply the plain meaning of a statute where the language is clear and unambiguous, see *Conn v. Middlebury Union High School Dist. # 3*, 162 Vt. 498, 501, 648 A.2d 1385, 1387 (1994), and where there is ambiguity, we look to the general context of the statutory language, the subject matter, and the effects and consequences of our interpretation. See *Paquette v. Paquette*, 146 Vt. 83, 86, 499 A.2d 23, 26 (1985). We find unambiguous the applicable provision's initial phrase: "[w]hen the parents cannot agree to divide or share parental rights and responsibilities." 15 V.S.A. § 665(a). The parents here clearly "do not agree" on how best to allocate responsibility for their children. Nor do we find any question that the family court here "divided" parental rights and responsibilities between the two parents; the division gives father responsibility for decisions relating to the children's medical and educational needs, and responsibility for all other areas of legal responsibility to mother.

The language of § 665(a), however, is not plain or understandable in its requirement that the court award legal rights and responsibilities "primarily or solely" to one parent when parents disagree. Mother construes the phrase to mean that the entire "bundle" of legal rights and responsibilities identified in § 664(1)(A) must be assigned to a single parent. Father, on the other hand, argues that the statute is satisfied so long as each of the individual rights and responsibilities is awarded "primarily or solely" to one parent or the other, even if those rights and responsibilities are divided between the parents. In light of this ambiguity, we cannot determine the Legislature's intent from the plain meaning of the words, and must therefore look beyond

the language itself.[2] See *Langrock v. Department of Taxes*, 139 Vt. 108, 110, 423 A.2d 838, 839 (1980).

We have said before that, in cases where parents do not agree, § 665(a) reflects a legislative judgment that court-imposed joint decision-making is not in the best interests of the child. See *Bancroft v. Bancroft*, 154 Vt. 442, 448, 578 A.2d 114, 118 (1990). That said, we have also had occasion to caution against a statutory construction of § 665(a) which would obligate a court to take an "all or nothing" approach to the allocation of legal rights and responsibilities. See *Gazo v. Gazo*, 166 Vt. 434, 443, 697 A.2d 342, 347 (1997); *Cabot v. Cabot*, 166 Vt. 485, 494-95, 697 A.2d 644, 650-51 (1997). In *Gazo*, we concluded that the prohibition against compelled joint decision-making "does not mean that the only alternative is an award of all rights and responsibilities solely to one parent." 166 Vt. at 443, 697 A.2d at 347. In considering this statute, we also have reaffirmed the family court's "broad discretion to craft parental rights and responsibilities orders that serve the best interests of children." *Cabot*, 166 Vt. at 495, 697 A.2d at 651.

We find instructive the language of § 665(b)(8) which illuminates the Legislature's specific concern about dividing and sharing rights and responsibilities. Under that provision, when a court orders allocation of parental rights and responsibilities, the court shall consider, among other things, "the ability and disposition of the parents to . . . *cooperate with each other and make joint decisions* concerning the children." 15 V.S.A. § 665(b)(8) (emphasis added). In *Cabot*, we stressed that the statute reflects the Legislature's concern with forcing "unwilling parents to share parental rights and *make joint decisions.*" 166 Vt. at 494, 697 A.2d at 650 (emphasis added). The family court in that case imposed upon the parents joint decision-making authority for legal rights and responsibilities, even though they had not agreed to such an arrangement. We reversed the order out of concern that the imposition of joint decision-making responsi-

---

[2] A review of the statute's legislative history provides relatively little guidance to what the Legislature meant by the phrase "primarily or solely." It is to be noted, however, that an early version of the House bill set forth the newly developed concept of "parental rights and responsibilities," and also contained definitions of specific types of child "custody" that could result from different allocation of parental rights and responsibilities. Thus "joint legal custody" was defined as those arrangements where "both parents will share the parental rights and responsibilities relating to the child," and "sole legal custody" was defined as "one parent . . . be[ing] allocated rights and responsibilities relating to the child, *subject only to those rights and responsibilities as are specifically allocated to the other parent.*" See Vt. Senate Jour. 559 (April 21, 1986) (emphasis added).

bility upon unwilling parents "cannot solve the problem of fighting parents. . . . [and] risks placing a child in the middle of constant and harmful disputes." *Id.* We held that, where the parents cannot agree, "one parent must be given primary responsibility to make decisions on behalf of the child." *Id.* at 493 n.4, 697 A.2d at 650 n.4. But that requirement does not lead inexorably to the conclusion that one parent must be awarded *all* rights and responsibilities. See *Gazo*, 166 Vt. at 442-43, 697 A.2d at 346-47; see also *Cabot*, 166 Vt. at 504, 697 A.2d at 656 (Morse, J., concurring) (When parents cannot agree, circumstances may warrant court "reserving a specific, discrete area of parental responsibility for the noncustodial parent. The statutory scheme specifically contemplates such an award.").

■ In contrast to the family court's order in *Cabot*, the family court's order here has awarded each of the rights and responsibilities "solely" to one parent. In doing so, the order avoids the problems of joint decision-making while satisfying the Legislature's intent that children retain "the opportunity for maximum continuing physical and emotional contact with both parents." 15 V.S.A. § 650. Legal rights and responsibilities are divided between the parents along discrete lines of authority; father has exclusive authority for health care and education, and mother has exclusive authority for religion, travel, and other areas of responsibility. Had the court compelled joint decision-making in any individual area of authority, such as education, the court's order would have run afoul of our prior holdings. By avoiding an "all or nothing approach," the order keeps both parents in the role of active parenting, takes full advantage of their individual strengths, and avoids awarding either parent responsibility for which he or she is not suited. Cf. *Osier v. Osier*, 410 A.2d 1027, 1029-30 (Me. 1980) (in custody dispute, although court regarded mother as parent best suited for day-to-day care of child, court was constrained to award full legal and physical custody to father because mother, as Jehovah's witness, refused to authorize necessary blood transfusion for child). We hold that the family court's division of discrete legal rights and responsibilities between the parties satisfies the requirements of § 665(a).

Mother's second argument is that, even if § 665(a) permits division of legal rights and responsibilities between the parents, the court nonetheless abused its discretion by not granting her the entire bundle of legal rights and responsibilities. According to mother, the court ignored the fact that she had been primarily involved in the children's day to day needs, including medical care, and that father

had expressed approval of her actions concerning the children. She also contends that the court ignored her testimony that father had not always made good decisions regarding health care.

■ We see no basis to mother's claim that the family court abused its discretion by awarding father responsibility for medical care and school decisions. See *deBeaumont v. Goodrich*, 162 Vt. 91, 103, 644 A.2d 843, 850 (1994) (trial court has broad discretion in child custody matter; Supreme Court will not set aside result merely because it would have reached different result). Ample evidence in the record supports the court's order. To begin with, mother acknowledged the health risks inherent in her refusal to immunize the children. She stated simply that *she* had survived childhood infectious diseases and that "I'd rather my children took the risks." On the other hand, father communicated his intent to have the children immunized, and supported his position with testimony from Dr. Hagen, a board-certified pediatrician and member of the Immunization Advisory Committee for Vermont's Department of Health. Dr. Hagen testified that he believes children should be immunized against infectious diseases. When asked if a child living in Vermont who is not immunized is at risk, Dr. Hagen responded "I believe that to be the case. That is my professional belief." The family court found Dr. Hagen's testimony credible. In marked contrast is the testimony from mother's witness, Dr. Incao, whom the family court did not find credible. Dr. Incao expressed the opinion that the children's health was not at risk by not being immunized, but he admitted to having no formal training in either pediatrics or immunology, and to having done no research or publishing on the subject. Assessing the evidence before it, the family court concluded that mother had "consistently made decisions in the past which seem to reflect personal whim, the desire to be different or all-controlling, rather than a willingness to follow generally accepted, sound medical practice." The record supports the court's conclusion that father is the parent "more likely to make sound [medical and health care] decisions in the best interest of the children in the future."

■ We similarly find support in the record for the court's conclusion that mother's home schooling had failed to properly educate her child. As the court noted, the couple's eldest child could not read even simple words like "cat" nearly two years after he had been ready to start reading. During his kindergarten year, the child had attended public school, and according to his teacher, had mas-

tered everything expected of children by the end of that year. In subsequent years, however, when mother home schooled the child, his reading skills stalled. An education expert, Dr. Hasazi, tested the child at the time of trial and concluded he could not read. The record supports the family court's conclusion that "home schooling is having a present, ongoing and substantial detrimental effect" on the parties' eldest child, and that, accordingly, father should be granted legal responsibility for decisions concerning the children's education. See 15 V.S.A. § 665(b)(4) (family court shall consider the quality of the child's adjustment to the child's present schooling).

■ We similarly find no merit to mother's contention that the family court awarded father more legal rights and responsibilities than he requested. Mother contends that, because father's chief concerns were immunizations for the children and their enrollment in public school, at the most he should have been given legal responsibility for only those specific decisions, rather than medical and education decisions generally. From the family court's decision, however, it is clear that father was seeking sole legal rights and responsibilities over medical care and educational decisions, rather than the limited areas of immunizations and whether to send the children to public school.

■ Mother finally argues that the family court's allocation of rights and responsibilities is "confusing and unworkable." The thrust of her argument seems to be that, as the primary physical custodian, mother is entitled to move residence of her and the children to a different town or a different state. See *Lane v. Schenck*, 158 Vt. 489, 498, 614 A.2d 786, 791 (1992). Mother contends that such a move by her would make father's continued legal authority over medical and educational decisions unworkable. We decline to address mother's contention except to point out that the court's order specifically retains mother's authority to "provide day-to-day medical care for the children." We will not judge the efficacy of a family court's order on circumstances that could potentially arise in the future. See *deBeaumont*, 162 Vt. at 97, 644 A.2d at 846 (family court order should be based upon parties' current circumstances, not potential changes in the future).

*Affirmed.*

**Johnson, J.,** dissenting. An absolute prerequisite to any significant division of parental rights and responsibilities is an agreement by the parents to the division. Our law is clear and unequivocal on this point.

See 15 V.S.A. § 665(a) ("When the parents cannot agree to divide or share parental rights and responsibilities, the court shall award parental rights and responsibilities primarily or solely to one parent."). The majority acknowledges the compulsion of the law in the context of *shared* responsibilities, yet inexplicably ignores its force in the area of *divided* responsibilities. This is a distinction that finds virtually no support in either the language or the policy underlying the statute. Accordingly, I respectfully dissent.

The majority faithfully reports the trial court's ruling, but discreetly omits many telling details. The parties had generally agreed during the marriage to home school the children and to defer a number of standard immunizations, but disagreed once the marriage was broken. Each party offered evidence, including the testimony of experts, to support its position. Mother had always been the children's primary caregiver, and the trial court apparently concluded that her care had been sound and should continue, as evidenced by its award to her of sole physical custody. Indeed, the court acknowledged that mother had been "a good, caring, attentive mother on a daily basis."

Nevertheless, the trial court disagreed with mother's decisions in the areas of schooling and immunizations, as well as breastfeeding and sleeping. Indeed, the court's opinion delves to an extraordinary degree into these intimate areas of childrearing, opining, for example, that "longterm bed sharing and breast feeding . . . are not in the best interests of the children [and] may foster undue dependency," that home schooling was "no substitute for five days a week in the classroom, or perhaps more importantly, the schoolyard," and that mother's medical decisions "reflect[ed] personal whim . . . rather than . . . sound medical practice." Accordingly, despite its award of physical and legal rights and responsibilities to mother, the court determined to carve out the areas of schooling and health care and award them to father on the ground that his predilections in these areas represented the best interests of the children. This, despite the fact that mother had not only failed to assent to the award to father, but sharply disagreed with his views on both subjects.

The trial court's decision was untenable. It was untenable under our law, and it was untenable under the sound common sense that informs it. Our statutory scheme governing parental rights and responsibilities reflects a general rule derived from common experience: the parent who is entrusted with the daily care and control of a child must be afforded the broadest possible latitude, consistent with

health and safety, in decisions relating to the child's education, medical care, discipline, travel, residence, and general upbringing. This Court has stated unequivocally that the custodial parent's decisions in these areas may not be second guessed by a trial judge: "[W]e cannot condone a process that substitutes the judgment of a court for that of the custodial parent merely because the court would have done something different if it had been the parent." *Lane v. Schenck*, 158 Vt. 489, 495, 614 A.2d 786, 789 (1992).

The same interest in preserving parental authority and minimizing parental second-guessing is codified in our statutes, which expressly prohibit the court from ordering the parties to "divide or share parental rights and responsibilities" absent their express agreement. 15 V.S.A. § 665(a). Recently, in *Cabot v. Cabot*, 166 Vt. 485, 493-95, 697 A.2d 644, 649-51 (1997), this Court held that the language and policy underlying the statute invalidated an award of shared parental rights and responsibilities where the parents had not agreed to such an arrangement. As we explained:

> The Legislature recognized that where parents cannot work together, one parent must be given primary responsibility to make decisions on behalf of the child. In terms of the statute, this means that a court cannot award joint legal parental rights and responsibilities to parents who do not agree to such an award.

*Id.* at 493 n.4, 697 A.2d at 650 n.4.

As noted, 15 V.S.A. § 665(a) applies to awards of "joint" as well as "divided" custody. Thus, parental agreement is just as much a statutory prerequisite to an order providing for *divided* legal custody as it is to one providing for *shared* legal custody. And the policy underlying the statute applies with equal force as well: "[W]here parents cannot work together, one parent must be given primary responsibility to make decisions on behalf of the child." *Cabot*, 166 Vt. at 493 n.4, 697 A.2d at 650 n.4.

Indeed, common sense teaches that the custodial parent cannot reasonably be asked to supervise and participate in the child's daily life, so much of which centers on schooling and health care, dispossessed of basic decisionmaking authority in these areas. Every primary care provider of school age children knows that ferrying the children to and from school represents only the tip of the custodial parent's responsibilities; supervising and helping with homework, attending parent-teacher conferences, PTO meetings, and school

plays, and participating in school fundraisers and other events all require strong parental interest and motivation, and all are fraught with potential conflicts requiring parental intervention. The custodial parent cannot, and should not, be expected to undertake these daily responsibilities deprived of essential decisionmaking authority. The same may be said for such basic areas of childrearing as medical care, religious upbringing, discipline, travel, and the like. That is why the Legislature wisely established parental assent as a prerequisite to *both* shared and divided custody.

Thus understood, the Court's decision in this case should have been as obvious as that in *Cabot.* There was no agreement between the parents to divide parental rights and responsibilities. Hence, the trial court's order assigning responsibility for the children's education and medical care to father, and the balance of legal and physical rights and responsibilities to mother, was patently invalid and should not be allowed to stand.

The trial court's decision in this case was unmistakably a choice between alternative lifestyles under the guise of divided legal rights and responsibilities. Today's holding affirms the trial court's *power* to make such choices by parsing discrete areas of parental authority based upon the respective views of the custodial and noncustodial parent. The Court's holding does not endorse the *wisdom* of such an approach. For the reasons expressed above, I am hopeful that courts will exercise this new power with restraint, recognizing that in childrearing decisions parents must speak with one voice, and that voice should generally be the custodial parent's.