2010 VT 80

## Matoaka THOMPSON v. Jesse PAFUNDI

[8 A.3d 476]

No. 09-397

¶ 1. August 19, 2010. Mother appeals the Washington Family Court's award to father of physical and legal rights and responsibilities for the couple's minor daughter. On appeal, mother contends: (1) the court violated her due-process rights when, without notice to her, it converted a hearing to amend temporary parent-child contact into a final determination of parental rights and responsibilities; (2) the trial court's award of custody to father was a de facto award to the paternal grandparents; (3) the trial court erred in failing to find a real, substantial, and unanticipated change in circumstances before conducting the statutory analysis of the child's best interests under 15 V.S.A. § 665(b); (4) the trial court's findings were clearly erroneous and did not support the court's conclusions; and (5) the court erred in not providing an order for parent-child contact. Deferring to the trial court's broad discretion, we affirm.

¶ 2. The material facts are largely uncontested. The child was born July 27, 2008. Parents stipulated in December 2008 to a temporary order giving mother sole physical and legal rights and responsibilities for their daughter. Under that order, father was to have contact with the child six out of seven days a week with the possibility of increasing contact as the child grew older. Indeed, father spent increasing amounts of time with his daughter. By February 2009, the child and father spent "significant blocks of time" away from mother, sometimes for several days or up to a week. The child's paternal grandparents, who live in New York state, several hours drive from central Vermont, provided significant financial and child-care support. They often took care of the child when parents needed to work. In June and July 2009, the child spent as much time or more with father and father's parents than with mother.

¶ 3. Starting in early spring 2009, over a short period of time mother lost her driver's license for failure to pay fines and lost her waitressing job. Mother fell behind in her rent and utility payments, her

car was repossessed, and she was forced to leave her apartment. At the beginning of summer 2009, mother decided to pursue her dressmaking ambitions by applying to a graduate program in costume design in California. In July 2009, she secured final admission to a selective theater-arts program at University of California at Long Beach, where she planned to move with her elder daughter from a previous relationship and the young child at the heart of this custody dispute.

¶ 4. On July 12, 2009, after returning from a month-and-a-half long trip to various rock concerts along the East Coast, mother informed father of her unilateral decision to move. She planned to depart August 12, 2009. On July 13, 2009, the day after telling father she intended to move, mother filed for an emergency modification of the parent-child contact laid out in the December temporary order and requested an expedited hearing. The trial court scheduled the expedited hearing for August 5, 2009. Mother also sought leave to participate by telephone in the final custody hearing, originally scheduled for September 1, 2009. In a letter to the court clerk, mother's trial counsel also suggested that the final hearing be moved forward to complete the matter before mother's departure. On July 16, 2009, father filed an emergency motion for an expedited final hearing and sought primary parental rights and responsibilities on the basis that mother's proposed move to California would damage his relationship with their daughter and destroy the strong bond the child had developed with her paternal grandparents. On August 4, after an unexpected cancellation on the court's afternoon calendar, the judge granted father's unopposed motion for a final hearing on parental rights and responsibilities. The final hearing was shifted to August 5, the same day mother's motion for modification had been scheduled.

¶ 5. At the start of the hearing, the judge conferred with counsel for both sides and then asked in open court if they were prepared to proceed with a "final" hearing. Neither party objected. Mother testified that she knew she and father had agreed only to a temporary custody arrangement and that a final hearing would have to occur. In her testimony, mother expressed a desire to "deal with [the final determination of custody] all right now while I'm here [rather] than when I'm 3,000 miles away."

¶ 6. At the hearing, the trial court heard testimony indicating mother and father's early time together had been chaotic. They met while working at an inn in Stowe. Mother, then a waitress, and father, a bartender, drank and used marijuana and cocaine after work. On occasion they sold small amounts of marijuana, and they traveled outside the state to secure drugs. Although mother determined to stop using illegal substances once she found out she was pregnant, the trial court credited testimony that she continued to do so to the point that the couple discussed terminating the pregnancy. The trial court also credited cumulative evidence that, despite claims of sobriety — including testimony during the hearing — mother continues to use drugs recreationally. Father drank and continued to use drugs for a short time after the child was born. He has two convictions for driving under the influence. Father continues to drink moderately, but also continues to attend counseling even after completing a state requirement.

¶ 7. The trial court also heard testimony from a private investigator, whom the child's paternal grandparents had hired to trail mother to a summer concert. The private investigator indicated she had observed mother and her boyfriend repeatedly from a small pipe, presumably containing marijuana, during the music concert. The court admitted into evidence still photographs extracted from a video taken by the private

investigator at the concert. On the Friday before the hearing, father had observed drug paraphernalia in plain view in mother's apartment. Father also testified that he discovered what he believed to be a hit of LSD in mother's purse in the week before the hearing.

¶ 8. In its final order, the trial court determined that both parents had strengths and weaknesses, but that the interplay of statutory best-interest factors favored father overall. The trial court found that though mother had been the primary caregiver during the first six months, all other factors favored father, and the court awarded him primary parental rights and responsibilities. The court found that both parents loved the child and were capable of providing affection and ensuring her daily needs were met. Mother also testified that she wanted to return to school to improve her ability to care for the child and the child's elder half-sister. But the trial court judge observed that mother's belief that the child would simply "cope" with her father's absence "betrayed astonishing ignorance about the importance of [the child] forming a positive parental attachment with her father" and that she thus lacked insight into the child's developmental needs. Moreover, the trial court judge noted that mother's continued use of illegal drugs and decision to continue driving after her license was suspended for failure to pay fines called into question both her ability to provide adequate guidance to the child and to ensure a safe environment. The court had some misgivings about father's own ability to provide a safe environment given his checkered history of substance abuse, but also found that he had gained insight into his previous missteps and that his parents represented a strong counterbalance. With respect to the paternal grandparents, the court also determined it was not in the child's best interest to disrupt the strong bond that had developed between them and the child. The court instructed the parties to work out a parent-child contact schedule and to return to court if they were unable to come to an agreement. This appeal followed.

¶ 9. Mother first contends that the trial court violated her due process rights by converting a hearing on modification of parent-child contact under a stipulated temporary order into a final hearing on parental rights and responsibilities without providing her adequate notice. In support of this assertion, mother relies on the trial court's willingness to accommodate mother's own request for an expedited resolution before her scheduled departure and, apparently, ignores the record.

¶ 10. As noted, on July 16, father requested that the trial court schedule a final hearing on parental rights before mother's August 12 departure for California. Mother lodged no objection to father's motion — filed nearly three weeks before the hearing. Following a break in the trial court's typically busy calendar, the trial court granted father's request for an expedited final hearing and scheduled it for August 5, the day originally slated for mother's motion. More than two weeks before the hearing, in a letter to the court, mother's own trial counsel urged the trial court to advance the September 1 final hearing to accommodate mother's planned departure. At the hearing, mother testified that she had discussed the upcoming hearing with father at least two weeks before. Mother, in fact, came to court desiring to have "the final hearing in terms of custody" before she "left for California [August 12]." When the trial court judge asked whether mother and father were prepared to proceed with a final hearing no objection was offered. The evidence clearly indicates mother was on notice and waived any objection. There was no error.

¶ 11. We next consider the trial court's analysis of the child's best interests in

assigning primary physical and legal parental rights and responsibilities to father. This Court applies a highly deferential standard of review to trial court decisions regarding parental rights and responsibilities. *Payrits v. Payrits*, 171 Vt. 50, 53, 757 A.2d 469, 472 (2000) ("Given its unique position to assess the credibility of witnesses and weigh the evidence, we will not set aside the [trial] court's findings if supported by the evidence, nor its conclusions if supported by the findings." (quotation omitted)). Furthermore, the trial court is to be afforded broad latitude in determining a child's best interests. *Kasper v. Kasper*, 2007 VT 2, ¶ 6, 181 Vt. 562, 917 A.2d 463 (mem.) ("The family court, in exercising its broad discretion in custody determinations, is entitled to draw upon its own common sense, experience in life, and the common experience of mankind and be able to reach a reasoned judgment." (quotation omitted)). Here, we find no basis to disturb the trial court's sound reasoning and analysis.

¶ 12. A trial court does not need to make specifically enumerated findings regarding each of the governing statutory factors in 15 V.S.A. § 665 so long as the record as a whole indicates they were all considered. *Harris v. Harris*, 149 Vt. 410, 413-14, 546 A.2d 208, 211 (1988). Nevertheless, here the trial court made detailed findings regarding all of the relevant statutory factors for both parents. Only one of the nine factors favored mother: primary caregiver. 15 V.S.A. § 665(b)(6) (mandating consideration of "the quality of the child's relationship with the primary care provider"). If anything, the trial court was perhaps more deferential to mother in finding that she was, in fact, the primary caregiver than the evidence would support.[1] Father was involved in

child care from birth and spent increasing amounts of time caring for the child as her age permitted.

¶ 13. Mother argues that the trial court erred in considering the "perceived deficits" in her character because they were irrelevant to the determination of the child's best interests. For this contention, she relies on 15 V.S.A. § 667(a), which states: "Evidence of conduct of a parent not related to the factors in section 665 . . . shall only be admissible for the purposes of determining parental rights and responsibilities if it is shown that the conduct affects the parent's relationship with the child." It is true that the trial court's analysis must focus on how the conduct relates to the best interests of the child. See *Hansen v. Hansen*, 151 Vt. 506, 508-09, 562 A.2d 1051, 1053-54 (1989) (stating that if "court's determination [is] unrelated to . . . the best interests of the children, it must fail"). In conducting that analysis, it is appropriate for the trial court to consider the characteristics of each parent as they relate to the statutory factors contained in 15 V.S.A. § 665(b). See *DeLeonardis v. Page*, 2010 VT 52, ¶ 28, 188 Vt. 94, 998 A.2d 1072 (affirming family court's custody decision relying on nonstatutory facts because those findings were related to statutory factors).

¶ 14. Here, we find that the trial court judge appropriately considered mother's continued drug use and apparently routine decision to drive without a license, particularly as they concerned her ability to provide guidance to her young daughter. See 15 V.S.A. § 665(b)(1) ("ability and disposition of each parent to provide the child with . . . guidance"). The court found

---

[1] Early on visitation took place at mother's home because of the child's young age. These initial visits were not "super-

vised" as mother's counsel erroneously suggests. The term "supervised visit" in Vermont family law has a specific connotation, suggesting that there was some reason for which a parent could not appropriately be left alone with a child. This was not the case.

that "[r]outine lawbreaking behavior does not set a good role model for the child." The court also noted, with appropriate concern, the potential safety risk posed by the careless fashion in which mother left drug paraphernalia within easy reach of children and father's discovery in mother's partially open purse of what father believed to be LSD. See 15 V.S.A. § 665(b)(2) ("ability and disposition of each parent to assure . . . a safe environment"). The trial judge also expressed concern about evidence indicating that mother and her boyfriend may have been dealing drugs. To be sure, the trial court judge also considered evidence of father's own history of substance abuse. Clearly these facts have direct bearing on the character and fitness of both parents' ability to provide for the child's best interests and more specifically their ability to provide for the child's safety. The trial court judge appropriately considered them.

¶ 15. As to the trial court's consideration of the paternal grandparents' relationship with the child and their contribution to her care, it did so appropriately as a matter of statutory analysis and precedent. Mother argues that the court effectively elevated the child's paternal grandparents to party status and abused its discretion by implicitly considering the grandparents preferable to either parent. Neither the record nor the final order supports these contentions.

¶ 16. In a parental rights and responsibilities decision, 15 V.S.A. § 665(b)(7) requires the family court to consider the child's relationship with "any other person who may significantly affect the child." Mother and father both testified that after them, their daughter was closest to her paternal grandparents. The trial court found that the child had a strong bond with the paternal grandparents that would be diminished if mother retained parental rights and responsibilities and relocated to California. Furthermore, this Court has affirmed other custody awards that took specific note not only of the child's relationship with grandparents, but also of their assistance in raising the child. See, e.g., deBeaumont v. Goodrich, 162 Vt. 91, 103, 644 A.2d 843, 848 (1994) (holding that trial court did not abuse discretion in finding that relocation would reduce value of children's close relationship with grandparents and support they provided); see also Harris v. Harris, 162 Vt. 174, 179-81, 647 A.2d 309, 313-14 (1994) (ruling that court did not err in considering support provided by paternal grandmother when awarding custody to father over mother, who had been primary caregiver). Here, the trial court also specifically inquired into the relationship the child enjoyed with her elder half-sister, who would be relocating to California, and her maternal grandmother, who lived about two hours from mother's intended residence and with whom the child had not yet established a bond. The court concluded that, if a choice must be made, the child's best interest was in maintaining the already close relationship she enjoyed with her paternal grandparents. We can find nothing in the record to suggest that this determination, supported by concrete references to parents' own testimony, was clearly erroneous or an abuse of discretion.[2]

¶ 17. Lastly, mother contends that the trial court erred by failing to apply the law of relocation to this case. Specifically, mother argues that the trial court should have first found a "substantial and unanticipated change of circumstances" by applying the framework outlined in Hawkes v. Spence, 2005 VT 57, 178 Vt. 161, 878 A.2d 273, before conducting the statutory best-interests-of-the-child analysis. Hawkes is inapplicable. This is not a relocation

_____

[2] We make no determination here as to the relative weight a court should afford a child's relationship with half-siblings or grandparents.

case, despite mother's intention to move to California. It is a final determination of parental rights and responsibilities following a temporary order, which mother and father had verbally amended as father became increasingly involved in the child's life. See *Porcaro v. Drop*, 175 Vt. 13, 816 A.2d 1280 (2002). In *Porcaro*, this Court affirmed a custody-shift decision in which the trial court proceeded directly to a statutory best-interests analysis in crafting a final order because the temporary order in place up until then was just that: temporary. *Id.* at 14, 816 A.2d at 1282.

¶ 18. With respect to mother's claim that the trial court abused its discretion by not setting a parent-child contact schedule for the infant and mother, we find it without merit. We note that in the final order the judge specifically instructed the parties to meet and work out an appropriate schedule in light of mother's move to California. If the parties were unable to reach an agreement, the trial court indicated it would conduct a separate hearing.

*Affirmed.*