2014 VT 10



Paine v. Buffa (2013-193)

 

2014 VT 10

 

[Filed 31-Jan-2014]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to
notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by
mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont
05609-0801, of any errors in order that corrections may be made before this
opinion goes to press.

 

 


 2014 VT 10
 
  


 No. 2013-193
 
  


 Nathan Paine
 
 
 Supreme Court
 
 
  
 
 
  
 
 
  
 
 
 On Appeal from
 
 
      v.
 
 
 Superior Court, Windham Unit,
 
 
  
 
 
 Family Division
 
 
  
 
 
  
 
 
 Jaime Buffa
 
 
 November Term, 2013
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 John
 P. Wesley, J.
 
 
  
 
 Jean Anne Kiewel of Jean Anne Kiewel, PC,
Brattleboro, for Plaintiff-Appellee.

 

Sharon L. Annis of Buehler & Annis,
PLC, Brattleboro, for Defendant-Appellant.

 

 

PRESENT:  Reiber, C.J., Dooley, Skoglund, Robinson and
Crawford, JJ.

 

 

¶ 1.            
CRAWFORD, J.   Mother appeals the family division’s
decision to place sole legal parental rights and responsibilities for the
parties’ two daughters with father.  She also appeals the family
division’s award of a share of the equity in the marital home to father.
 We affirm.

¶ 2.            
The parties met in 2002 in Colorado, when father was twenty-two and
mother was eighteen, and moved in together shortly afterward.  After
traveling for about a year, they moved to southern Vermont in 2003.  In
October 2003 mother’s parents, who live in the state of Georgia, financed their
daughter’s purchase of a home on Paul’s Road in Brattleboro.  The couple
moved into the home and lived there until mother sold it in November
2007.  During this time, father worked seasonally at an apple orchard and
performed some carpentry work, and mother worked as a waitress and as a clerk
at a farm stand.  The couple was able to live beyond their limited means
through continuing support from mother’s parents. 

¶ 3.            
Mother and father grew dissatisfied with the Paul’s Road house,
particularly due to its thermal inefficiency.  In July 2005 mother
approached her parents for money to purchase a thirty-two-acre parcel of land
on Sunset Lake Road in Brattleboro.  Over the next two years, mother and
father worked to construct a house on the property, where they intended to live
“off the grid” and become self-sufficient homesteaders.  Father provided
substantial labor, and mother’s parents provided money for materials and additional
labor. The couple moved into the house in September 2006.  Mother was less
committed to the homesteading life than father and quickly abandoned her plan
to raise sheep and create wool fabric products.  After selling the house
on Paul’s Road in 2007, she deposited the proceeds into her own bank account
and used the money to support herself and her family. 

¶ 4.            
Although by all accounts their relationship had been tumultuous and
frequently unhappy, the parties decided to marry in June 2007.  Shortly
after the wedding, mother discovered she was pregnant with the couple’s first
daughter, who was born in March 2008.  Their second daughter was born in
February 2011. 

¶ 5.            
By September 2011, the parties had decided to separate.  Father
moved out of the marital home but cared for the children there for three to
four days a week, including overnights, while mother attended community college
in Massachusetts.  Father filed for divorce in March 2012, and began to
spend his time with the children at a cabin located on his employer’s orchard
where he lived.  

¶ 6.            
In April 2012, mother moved for an expedited hearing on parent-child
contact because she had made plans to relocate with the children to North
Carolina.  The court denied immediate relief because no emergent
circumstances had been demonstrated and the parties had not yet met with the
case manager to attempt to develop a parenting plan.  Mother then filed an
emergency motion claiming that father’s insistence on having parent-child contact
at his cabin put the children’s well-being at immediate risk.  The court
held an emergency hearing in May.  It concluded that the evidence did not
support mother’s assertions that father’s cabin was an unsuitable place to take
the children or that the children were actively resisting going to the cabin.
 It stated that the motion appeared to be driven by mother’s desire to
gain an early determination of custody so she could move to North Carolina with
the children.  The court stated that it would award temporary legal
custody to father unless the parties stipulated to joint legal parental rights
and responsibilities.  Shortly thereafter, the court approved a temporary
stipulated order under which the parties shared legal and physical responsibilities.


¶ 7.            
Although she had originally intended to move to North
Carolina, by the time of trial mother planned to move to Georgia, where her
parents lived. She submitted proposed parenting plans that were premised
upon her residing in Georgia and having sole legal responsibilities and shared
physical responsibilities for the children.  She offered to send the
children to visit father in Vermont during school vacation, or to have father
move into one of her parents’ homes in Georgia so he could see the children
more often.  

¶ 8.            
The final hearing was held over several days in February 2013.  On
the first day of trial, mother and father were served with a complaint filed
against them in Georgia by mother’s parents seeking to recover the funds
allegedly loaned to the parties for the purchase and improvements of the Sunset
Lake Road and Paul’s Road properties.  The total amount sought was over
$700,000. 

¶ 9.            
The court issued its decree of divorce in March 2013.  It
determined that the parties were nearly equally situated with regard to the
statutory factors set forth in 15 V.S.A. § 665(b).  However, because
mother was “adamant” in her desire to relocate and the court found that it
would not be in the best interest of the children to move to Georgia, the court
awarded sole legal responsibility to father and shared physical responsibility
to both parties.  The court found that the house on Sunset Lake Road was
the sole significant asset of the marriage and had a fair market value of
$350,000..  It awarded the home to mother subject
to father’s equity share of $85,000, which would constitute a lien on the
property.  The court ordered mother to pay father his equity share within
120 days of the decree.  It provided that after 120 days, interest would
begin to accrue and father would have the choice of initiating a foreclosure
action or moving to compel mother to list the property for sale.  The
court ordered mother to hold father harmless in the event that her parents
secured a judgment against him in the civil action in Georgia.  Mother
appeals both the custody and property awards.

I.

¶ 10.         We
first consider mother’s challenge to the court’s assignment of sole legal
rights and responsibilities to father.  This Court applies a highly
deferential standard of review to decisions of the family court regarding
parental rights and responsibilities.  Thompson v.
Pafundi, 2010 VT 80, ¶ 11, 188 Vt. 605, 8 A.3d 476 (mem.).
 “[W]e do not disturb findings of fact unless they are clearly erroneous,
and we uphold the court’s legal conclusions if they are supported by the
findings.”  DeSantis v. Pegues, 2011 VT 114, ¶ 26, 190 Vt.
457, 35 A.3d 152.  “We view the findings in the
light most favorable to the prevailing party, and only reverse if the court
exercised its discretion upon unfounded considerations or to an extent clearly
unreasonable upon the facts presented.”  Chickanosky
v. Chickanosky, 2012 VT 52, ¶ 17, 192 Vt. 627, 54 A.3d 162 (mem.).


¶ 11.         Mother
claims that the family court abused its discretion by assigning sole legal
custody to father based on her proposed relocation to Georgia.  She claims
that the court focused on this factor to the exclusion of the statutory
best-interests factors, and ignored her testimony that she would stay in
Vermont if that was the only way she would get legal custody.  

¶ 12.         In
making an order of parental rights and responsibilities, the family court’s
paramount concern is the best interests of the child. Id.
¶ 19. Section 665(b) sets forth a nonexclusive list of factors that
the court must consider in awarding custody.  15 V.S.A.
§ 665(b).  Although relocation is not specifically listed as a
factor, our case law makes clear that the family court should consider a
party’s proposed relocation when making a final order of parental rights and
responsibilities.  See Gazo v. Gazo, 166 Vt. 434, 441, 697 A.2d
342, 346 (1997) (“In general, we encourage courts to award parental rights and
responsibilities in light of a parent’s proposed relocation.”).  In Gazo
we recognized that where parents are almost equally situated with respect to
the statutory factors set forth in § 665(b), the parties’ proposed
residences can become a dominant factor in the court’s decision.  Id. 
We held that in such circumstances it was appropriate to give the party who
proposes to relocate the choice of specifying the facts upon which the court
should base its custody decision.  Id. at 441-42  The party
“has the option of telling the court either that (1) she will move, so that any
later relocation by [her] consistent with the proposed relocation will not be
unanticipated, or (2) she has made no firm decision to move, so that any later
relocation by [her] will be unanticipated.”  Id.
at 442.  

¶ 13.         Here,
mother repeatedly represented to the court prior to and during the trial that
she intended to relocate after the divorce.  Both of the proposed
parenting plans she submitted prior to trial provided that she would live in Georgia
with the children, with father living either in Vermont or in Georgia.  At
trial, mother testified that she had applied to a dental hygiene training
program in Georgia, had an offer of a highly paid job through one of her
father’s business associates, and could live in one of her parents’ homes
there.  She testified that if father moved to the same area, she
could arrange for her parents to provide him with a residence at very favorable
financial terms.  Not until the last day of trial did she state that she
would be willing to remain in Vermont if it meant retaining legal
custody.  Taken as a whole, mother’s representations to the court from the
outset of the divorce proceeding until the last day of trial indicated that she
intended to leave Vermont.  Thus, the family court did not err in
concluding that mother had made a firm decision to move and basing its custody
decision in part on her anticipated relocation. Id. 

¶ 14.         Furthermore,
the family court’s decision to assign legal custody to father was supported by
its findings.  Citing Hawkes v. Spence, 2005 VT 57, 178 Vt. 161,
878 A.2d 273, the court stated that “the critical assessment in judging the
impact of a proposed relocation is whether the relocation would significantly
impair the other parent’s ability to continue exercising the rights and
responsibilities he had been exercising.”  The court found that moving the
children to Georgia would reduce the father’s role previously defined in the
temporary custody plan.  This finding, coupled with consideration of the
quality of the children’s adjustment to their current community, see
§ 665(b)(4), and their established relationships with their father and
other local family and friends, led the court to conclude that the proposed
relocation would be unduly disruptive for the children.  The court also
found mother’s plans for employment, schooling and free housing at her parents’
property in Georgia to be speculative given her previous inability to commit to
long-term employment or complete her education, and her parents’ lawsuit
against her and father.  It determined that father should be the parent
who would have the right to determine the children’s residence, in the
expectation that he and they would remain in Vermont.  

¶ 15.         While
mother’s proposed relocation was central to the court’s consideration, it
explicitly considered other statutory factors in reaching its decision. 
The court determined that both parents were equally situated with regard to
providing the children with love, affection,  guidance,
and material support, and were both reasonably sensitive to the children’s
developmental needs.  However, it found that father was better able and
disposed than mother to foster a positive relationship and frequent and
continuing contact with the other parent.  Accordingly, it determined that
sole legal responsibilities should be assigned to father and the parents should
continue to share physical responsibilities equally. 

¶ 16.         Mother
argues that the court improperly applied the standard set forth in Hawkes v.
Spence in making its decision.  In Hawkes, we adopted a
standard for courts to apply when considering a motion to modify parental
rights and responsibilities based on the custodial parent’s proposed relocation
out of state with the parties’ children.  2005 VT 57,
¶ 13, 178 Vt. 161, 878 A.2d 273.  We held that “relocation is
a substantial change of circumstances justifying a reexamination of parental
rights and responsibilities ‘only when the relocation significantly impairs
either parent’s ability to exercise responsibilities the parent has been
exercising or attempting to exercise under the parenting plan.’ ”  Id. (quoting ALI Principles of the Law of
Family Dissolution § 2.17(1) (2002)).  While acknowledging that there
is no precise formula for determining when a parent’s ability to exercise his
or her responsibilities has been impaired, we set forth a nonexclusive list of
factors for the family court to consider, including “the amount of custodial
responsibility each parent has been exercising, and for how long, the distance
of the move and its duration, and the availability of alternative visitation
arrangements.”  Id. 

¶ 17.         Mother
correctly points out that the family court is not required to find that there
has been a change of circumstances in order to make a final determination of
parental rights and responsibilities that is different from the determination
in a temporary order.  See Thompson, 2010 VT 80, ¶ 17 (holding
that trial court was not required to find substantial change in circumstances
before applying statutory best-interests test where mother proposed to relocate
prior to final order being issued); see also Porcaro v. Drop, 175 Vt.
13, 14, 816 A.2d 1280, 1282 (2002) (affirming decision to transfer custody
where trial court proceeded directly to statutory best-interests analysis in
crafting final order because existing order was temporary). In that respect,
the threshold requirement in Hawkes of evidence that the proposed
relocation significantly impairs either parent’s ability to exercise
responsibilities under the existing order does not apply. However, it was not
improper for the court to consider the amount of custodial responsibility each
party had been exercising under the temporary plan in deciding which parent
should exercise legal rights and responsibilities under the final order. 
See Thompson, 2010 VT 80, ¶¶ 2, 8 (discussing factors relevant to
family court’s transfer of custody to father, including fact that he had been
exercising extensive contact with child under temporary order). 
Modification of a final order to reflect one parent’s relocation requires a
specific showing of impairment of existing legal or physical parental
responsibilities.  Hawkes, 2005 VT 57, ¶ 13.
 In establishing parental rights in the first instance, there is obviously
no need to show changed circumstances.  As this case demonstrates,
however, the court may consider evidence about the effect of the proposed
relocation on the parties’ temporary parenting arrangement developed prior to
the final hearing.  The temporary arrangement may be relevant to several
of the statutory factors, including the children’s adjustment to their present
housing, school and community and their relationship with each parent,
particularly the primary care provider if there is one. 15 V.S.A. § 665(b)(1), (4), (6).  

¶ 18.         The
trial court’s decision to assign legal rights and responsibilities to father is
supported by its findings, which in turn are supported by the record evidence.
 Thus, we cannot say that the court’s decision was clearly erroneous.
 See Hoover v. Hoover, 171 Vt. 256, 261-62, 764 A.2d 1192, 1195
(2000) (affirming family court’s decision granting sole legal custody to father
where the findings on which it based its decision were supported by the
record). 

II.

¶ 19.         Next,
we consider mother’s challenge to the court’s property award.  Mother
argues that the court did not have the power to determine that the funds
provided to the parties by mother’s parents were gifts because that issue was
the subject of an unresolved lawsuit in Georgia.  She further asserts that
it was error to order her to pay $85,000 to father within 120 days of the
judgment because it would force her to sell the house and an unresolved problem
with the septic system would prevent her from doing so.  Finally, she
claims that the amount awarded to father was excessive.

¶ 20.         Section
751(a) of Title 15 gives the family court jurisdiction to settle divorcing
parties’ rights to their property.  In crafting a property settlement, the
court must first define the marital estate, which includes “[a]ll property
owned by either or both of the parties, however and whenever acquired.”  Id. 
Then, the court must equitably divide and assign the property, taking into
account all relevant factors including “the value of all property interests,
liabilities, and needs of each party.”  Id. § 751(a), (b)(6).  The family court has broad discretion in
fashioning an equitable award of marital property, and its decision will not be
disturbed absent a showing that the court abused its discretion.  Wade v. Wade, 2005 VT 72, ¶ 13, 178 Vt. 189, 878 A.2d
303. 

¶ 21.         Mother
argues that the family court erred in the first step by treating the funds
provided by her parents for the construction of the marital home and the
purchase of the land upon which it was built as gifts rather than loans.
 As noted above, mother’s parents sued the parties in Georgia just prior
to trial, seeking to collect the funds they had allegedly loaned to mother over
the years.  Mother claims that the family court therefore lacked the power
to determine that the funds were gifts.  Mother argues that when the
parties’ debt to her parents is properly accounted for, they have zero equity
in the marital home. 

¶ 22.         The
evidence supports the family court’s determination that the home on Sunset Lake
Road was a marital asset owned entirely by the parties.  Title to the home
was solely in mother’s name.  It is undisputed that mother’s parents provided
the funds to purchase the property as well as substantial additional funding
for improvements.  However, mother’s parents did not require mother or
father to execute a promissory note or mortgage, nor did they require father to
subject his homestead interest to any repayment obligation.  As the family
court found, there were none of the ordinary indicia associated with a typical
loan and mother’s parents never demanded repayment until the divorce was set
for a contested trial.[1] 
Although mother’s parents and mother testified that everyone understood at the
time of each advance that the money was to be treated as a loan, father
disputed that testimony, stating that his attempts to discuss repayment
conditions were always brushed aside.  The family court concluded that
there was no rational way to view the monetary contributions except as gifts,
and proceeded to treat the property as a marital asset unencumbered by the
claims of mother’s parents.  The court acted within its discretion in
valuing the property in this way.  See Nuse v. Nuse, 158 Vt. 637,
638, 601 A.2d 985, 986 (1991) (mem.) (holding that
family court acted within its discretion in refusing to subtract debt to
appellant’s mother from value of appellant’s home where it found that money
provided was more a gift than a loan).

¶ 23.         We do
not agree with mother’s argument that in dividing the equity in the marital
home, the family court impermissibly adjudicated the rights of nonparties to
the action.  The family court examined the nature of the parties’
contributions to the marriage and their financial arrangements in order to
value the marital estate, a matter that is within its jurisdiction.  15 V.S.A. § 751(a).  The court acknowledged that
mother’s parents had a pending collection action against the parties in
Georgia, and held that if a Georgia judgment were to issue mother would be
required to hold father harmless from its effect.  In essence, the court
allocated any future judgment against the parties in favor of mother’s parents
as a debt owed by mother only.  By so doing it fulfilled its statutory
duty to equitably divide and apportion marital assets and liabilities.  Id.;
see also Wade, 2005 VT 72, ¶ 23 (affirming family court’s division
of parties’ debts as within its discretion).  Mother’s parents remain free
to pursue a judgment in Georgia, but ultimate responsibility for that judgment
is placed with their daughter.

¶ 24.         This
case is unlike DeLeonardis v. Page, 2010 VT 52, 188 Vt. 94, 998 A.2d
1072, cited by mother.  In DeLeonardis, we reversed the family
court’s property settlement where the court failed to take into account the
interest held by a nonparty in the marital home. Id.
¶ 16.  The married couple had purchased a house using funds
provided by one of their mothers, who held a one-half interest in the house.
 The mother was not liable for the mortgage on the house, and the
outstanding debt secured by the mortgage exceeded the value of the couple’s
fifty percent interest in the house.  The trial court applied the
outstanding debt on the mortgage against the fair market value of the house
instead of against the value of the couple’s interest in the home.  This
resulted in a finding that each party had $52,500 in equity when in fact neither
had any equity in the home, warranting reversal.  Id.  By
contrast, in this case mother holds sole title to the Sunset Lake Road house.
 There is no mortgage, and mother’s parents have no recorded interest in
the property.  Any legal interest held by mother’s parents is largely
theoretical at this point.  Thus, the trial court did not err in including
the house in the marital estate and dividing the equity between the two
parties. 

¶
25.        
Mother also claims that it was unfair for the family court to order her
to pay $85,000 to father within 120 days of the divorce decree or risk
foreclosure or sale of the house.  The family court has the power to order
the sale of the marital home.  Mansfield v. Mansfield, 167 Vt. 606,
608, 708 A.2d 579, 582 (1998) (mem.); see also Milligan v. Milligan, 158
Vt. 436, 440, 613 A.2d 1281, 1284 (1992) (holding that court may order marital
property to “be liquidated and immediately reduced to cash when the court finds
it necessary, as here, to meet immediate needs”).  It also has the power
to create a security interest in the marital property on behalf of the party
who is not awarded possession to ensure that party receives his or her share of
the equity. See Sumner v. Sumner, 2004 VT 45, ¶ 9, 176 Vt. 452, 852
A.2d 611 (noting that court may create lien on marital home in divorce decree).
 We have previously held that “it is not inequitable to require certain
mechanisms to ensure that one spouse pay the other a fair share of the equity
in [marital] property, and to fashion an order that will accomplish this in a
reasonable amount of time.”  Mansfield, 167 Vt. at 608, 708 A.2d at
582 (affirming family court’s order that marital home be placed on market at
list price of $400,000, with price to be reduced by $10,000 for each ninety-day
interval it remained unsold).  

¶
26.        
In this case, the family court found that the marital home was the
parties’ only valuable asset and that father was entitled to receive a share of
the equity in order “to allow him a stake to continue” the task of parenting
the parties’ children.  It accordingly ordered mother to pay father
$85,000 within 120 days, after which she would start to accrue interest at
twelve percent per year and father could either initiate a foreclosure action
or compel mother to list the property for sale.  The court’s decision fell
within its wide discretion to fashion a schedule for distribution of the
marital property.  Id. 

¶ 27.         Mother
further claims that the trial court failed to consider that the leach field on
the Sunset Lake Road property will require $6,000 in repairs before the home
can be sold, and that she cannot pay this amount on her limited income.
 The record does not support mother’s claim.  It was by no means
clear from her brief testimony on the issue what the nature of the problem with
the septic system was, and there is no evidence that it rendered the house
unmarketable.  Accordingly, this is not a basis for reversal.

¶ 28.         Finally,
mother argues that $85,000 was an excessive award to father, because the value
of father’s labor in constructing the marital home was only $40,000.  As
we have noted in the past, the division of marital property “is not an exact
science.”  Plante v. Plante, 148 Vt. 234, 237,
531 A.2d 926, 928 (1987) (quotation omitted).  Where the family
court explains the rationale for its property division, we will not disturb it
on appeal unless the court abused its discretion. Wade,
2005 VT 72, ¶ 13.  Section 751 provides that the court may
consider “all relevant factors” in deciding how to divide a marital estate,
including the nonfinancial contributions of the parties as homemakers and their
respective merits.  15 V.S.A. § 751(b). 

¶ 29.         Here,
the court found that the marriage was a short-term marriage and that most of
the assets were acquired through mother’s parents.  However, it noted that
mother would likely continue to be supported by her family and her prospects of
acquiring additional wealth through inheritance were substantially better than
father’s.  See Billings v. Billings, 2011 VT 116, ¶ 23, 190
Vt. 487, 35 A.3d 1030 (holding that 15 V.S.A. § 751(b)(8) permits the
court to consider a spouse’s possible future inheritance in determining
opportunities of each spouse to acquire capital assets and income in the
future).  It found that father had made significant labor contributions to
the home and had also worked to support the family and care for the parties’
children during the marriage.  The court determined that under the
circumstances father was entitled to more than just the value of his labor, but
it rejected his proposed award of $150,000 as excessive.  It therefore
awarded $85,000 to father.  This was not an abuse of discretion and we
accordingly will not disturb the award on appeal.  See Williams v.
Williams, 158 Vt. 574, 577-58, 613 A.2d 200, 202 (1992) (affirming family
court’s award of marital home to wife, even though husband had contributed more
to value of residence, where court balanced that fact against source and income
of parties, need of parties, and nonmonetary contribution of wife as
homemaker). 

Affirmed.


  
 
 
  
 
 
 FOR THE COURT:
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Associate
 Justice
 
  

 

¶ 30.         ROBINSON, J., concurring.   The
majority addresses the questions presented as framed by the parties, as did the
trial court.  I have no objection to doing so, see, e.g., Demarest v.
Town of Underhill, 2013 VT 72, ¶ 2 n.1, ___ Vt. ___, ___ A.3d ___, and concur
in the majority’s opinion.  I write separately to flag an incongruity in
the parties’ framing of the case in connection with parental rights and
responsibilities lest our decision in this case be understood to have broader
implications than intended.

¶ 31.         The
main issue in this case with respect to parental rights and responsibilities
was whether, if mother relocated to Georgia, the children would be moving with
her subject to father’s rights of parent-child contact or whether,
alternatively, they would remain in Vermont with father subject to mother’s
right to parent-child contact.  The proposed parenting plans mother
submitted prior to the hearing contemplated an award of physical and legal
rights and responsibilities to mother, with considerable parent-child contact
for father.[2] 
Father, in contrast, proposed that physical and legal rights and
responsibilities be awarded to him if mother moved to Georgia, or alternatively
that physical rights and responsibilities be shared if she stayed in
Vermont.  Differences in the parties’ views about medical care and
educational matters were also in the mix, although these were not the dominant
issues in the case.  The trial court ordered shared physical rights and
responsibilities, and assigned legal rights and responsibilities to father.

¶ 32.         The
focus of the parties’ briefing to this Court is the trial court’s analysis of
the relocation issue.  The parties situate this issue under the rubric of
legal rights and responsibilities.  Like the majority, I believe the trial
court’s analysis of the impact of mother’s proposed relocation was well within
its discretion.  However, I also believe that the trial court’s resolution
of that issue lies within its unappealed order for shared physical rights and
responsibilities with a fifty-fifty percent division of the children’s
time.  As the trial court recognized in its decision, in the face of such
an order, if mother chose to relocate to Georgia, the order concerning the children’s
schedule would need to be modified “to address the logistics imposed by
[mother’s] relocation.”  The court made it clear that its order was
predicated on the expectation that both parents would reside in Vermont, and
that it was skeptical that a relocation of the children with mother to Georgia,
if mother proposed to move, would be in the children’s best interests. 
This conclusion, rather than the award of primary legal rights and
responsibilities to father, settled the relocation issue.

¶ 33.         “Legal
responsibility,” as opposed to “physical responsibility,” means “the rights and
responsibilities to determine and control various matters affecting a child’s
welfare and upbringing, other than routine daily care and control of the
child.  These matters include but are not limited to education, medical
and dental care, religion and travel arrangements.”  15 V.S.A.
§ 664(1)(A).  As a consequence, we have
considered issues involving specific conflicts relating to
many of the major categories of parental decisionmaking within the framework of
legal rights and responsibilities.  See, e.g., Shea v. Metcalf, 167
Vt. 494, 497-500, 712 A.2d 887, 889-91 (1998) (addressing parental differences
regarding health care and education through legal rights and responsibilities). 
On the other hand, where the children live from day to day is a function of
physical rights and responsibilities and the associated parent-child contact
schedule.  See, e.g., Chase v. Bowen, 2008 VT 12, ¶¶ 41-42,
183 Vt. 187, 945 A.2d 901(explaining that splitting legal and physical rights
does not run afoul of the statute and that physical responsibilities include
providing routine daily care and control of the child).  

¶ 34.         The
reason it is important that we not conflate legal rights and responsibilities
with disputes about where, and with whom, children live and spend their time is
that courts can and often do award physical rights and responsibilities to the
custodial parent, while awarding shared legal rights and responsibilities
pursuant to the parties’ agreement, or even primary legal rights and
responsibilities to the parent who is not assigned physical rights and
responsibilities.  See, e.g., Shea, 167 Vt. at 496, 712 A.2d at 888
(affirming order awarding physical rights and responsibilities to mother and
legal decisionmaking relating to education and medical care to father). 
The kind of cooperation reflected and cultivated by an agreement to share legal
rights and responsibilities is generally a good thing, and should be encouraged
in appropriate cases.  See Gazo v. Gazo, 166 Vt. 434, 443, 697 A.2d
342, 347 (1997) (recognizing trial court’s “flexibility to fashion an award
that keeps both parents involved in decision-making” when such an award is in
the best interests of the child).  

¶ 35.         The
kind of shared decisionmaking contemplated by an award of shared legal rights
and responsibilities is not incompatible with an award of primary physical
rights and responsibilities to one parent or the other.  Moreover,
cooperating parties can readily engage in that kind of shared decisionmaking
across great distances.  And, although it would be an unusual case, a
noncustodial parent can exercise the decisionmaking authority that accompanies
an award of primary legal rights and responsibilities from a distance. 
Any inference from this decision that an agreement to share legal rights and
responsibilities compromises a custodial parent’s ability to relocate with the
children would be incorrect and unfortunate. 


  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
  
 
 
 Associate Justice
 
  

 











[1] 
Further, mother had deposited the proceeds from the sale of the Paul’s Road
house into her own bank account and never repaid her parents.  The lack of
any action by her parents to recover that money until the parties decided to
divorce supports the family court’s conclusion that the funds were viewed as
gifts rather than loans.





[2] 
In her requests to find, as opposed to the parenting plans she submitted,
mother proposed that she be awarded legal rights and responsibilities, that the
court expressly recognize the expectation that she would be relocating to
Georgia, and that physical rights and responsibility be shared “as it relates
to [father’s] ability to spend a majority of the time with the children during
the summer months and school vacations in the State of Vermont as well as
additional contact time with them in Georgia as set forth in the proposed
parenting plan.”  Although mother framed her request as one for shared
physical rights and responsibilities, she essentially proposed that the
children live with her during the school year, subject to substantial
parent-child contact with father.