2012 VT 52

### Michael CHICKANOSKY v. Margaret CHICKANOSKY

[54 A.3d 162]

No. 11-305

¶ 1. July 11, 2012. The present appeal is the third in as many years involving the same parties. Mother appeals a family court order modifying her parent-child contact rights. We affirm.

¶ 2. The parties originally agreed to share parental rights and responsibilities as part of a December 2005 divorce order. In 2009, the family court granted, in part, father's motion to modify the original divorce order by awarding him sole legal parental rights and responsibilities. We affirmed in a three-justice entry order. See *Chickanosky v. Chickanosky*, Nos. 2009-094 & 2009-444, 2010 WL 7799902 (Vt. May 21, 2010) (unpub. mem.), http://vermontjudiciary.org/d-upeo/eo09-094.pdf.

¶ 3. In July 2010, the family court granted father's second motion to modify based on his planned move to Missouri. The court awarded him legal and physical parental rights and responsibilities, with mother having summertime and vacation parent-child contact. Specifically, the court provided that mother was entitled to "[e]ach summer vacation except for the first and last week of summer vacation," and was "encouraged to visit [daughter] in Missouri to help with the transition and familiarize herself with [daughter's] new house and school," in addition to "[r]easonable contact if she is in Missouri or if [father] brings [daughter] to Vermont." We affirmed in a full-court decision. See *Chickanosky v. Chickanosky*, 2011 VT 110, 190 Vt. 435, 35 A.3d 132.

¶ 4. The parties then got into a dispute over mother's unplanned or short-notice visits to Missouri. Three days after daughter left Vermont, and before a school was selected in Missouri, mother notified father that she planned to travel to Missouri beginning August 15 and she wanted daughter to stay with her in a hotel that week. Because the parties were unable to work out a contact schedule, due in part to their "historically bad communication," father filed an emergency motion to clarify contact on August 12, 2010. The court denied the motion the next day, noting that "[mother] is entitled to reasonable parent-child contact while she is in MO. The court expects the parties to work cooperatively to ensure that the minor child has an enjoyable first week of school — free from parental strife." On August 17, 2010 mother filed an emergency motion to enforce, which the court granted in part, stating mother could have contact that week from 6 p.m. to 7:30 p.m., and the following weekend as proposed by father in his previous pleadings.

¶ 5. Also in early August, father informed mother that his family had made plans for weekends away from Missouri from October 2-3 and October 28-31. He offered mother other October weekends for visits, but she could not arrange for a trip to Missouri during those weekends. When October arrived, mother filed an-

other emergency motion to allow her to spend October 25-31 with daughter in Missouri. She also moved on a nonemergency basis to clarify "the parent-child contact schedule for this school year and for the future." The court denied the emergency motion, and noted it would set a hearing date for the nonemergency motion. Around October 21, mother again asked father for time with daughter from October 28-November 1, but father reiterated that he had plans to be out of town that weekend, and offered her time from October 23-24, though mother declined this offer. The court found that daughter somehow became aware that mother was planning a visit in October, and that daughter was "again caught in the middle of strife created solely by her mother's last minute, unplanned and inconsiderate demand for contact."

¶ 6. Parent-child contact continued, apparently without significant problems, through February.* Because of snow days in Missouri, daughter's school vacation in February was cut short. Mother desired to fly daughter to Vermont for seventy-two hours, while father opposed this. Mother filed another emergency motion in February 2011, accusing father of willfully and maliciously violating the court's parent-child contact order, which the court denied. Mother ultimately traveled to Missouri and spent the weekend of

---

* A conflict arose over the holidays surrounding flights and travel expenses. Daughter spent her holiday break in Vermont. Her flight back to Missouri was cancelled because of bad weather, and mother got a hotel room in Boston. She accused father of "mak[ing] money on the deal" by getting a voucher from the airline because of the cancellation. The court stated that father, as custodial parent, makes the travel decisions, but urged him to consider daughter's travel time when making flight arrangements. This issue is not on appeal.

February 17-20 with daughter. Father did not allow daughter to have overnights with mother the following three nights because they were school nights, though mother had daughter with her each evening for dinner. The court found that mother was "bitterly resentful" that father did not allow her overnight contact on school nights, and concluded that mother was "patently unreasonable" in her request that daughter be flown to Vermont for a seventy-two hour trip and in requesting overnight contact on school nights.

¶ 7. In March, mother traveled to Missouri despite the fact that daughter did not have school vacation. Around this time, mother found a house to rent during her visit; it was located between daughter's home and her school. The court found that mother did not tell father she had rented the house. Daughter stayed at the house during mother's time in Missouri in March. Although there was some dispute about whether mother told daughter not to tell father about the house, the court found that daughter said nothing for several days. After daughter's disclosure to father, an email exchange followed where father requested that mother inform him about where she was staying, to which mother responded that "[i]t has never been a secret where I am staying." The court found that this situation caught daughter in the middle of parental strife created by mother, which could have been avoided if she had told father she rented the house. Following this conflict, father filed his own motion to clarify the contact schedule in April 2011.

¶ 8. In late May, daughter arrived in Vermont for her summer vacation with mother. At some point, father discovered that, unbeknownst to him, mother had given daughter an iPhone. When father asked daughter for the access code to check the phone, daughter became upset. The court found that mother's attitude with regard to this incident was "much

ado about nothing" and that she was oblivious to the fact that the situation could have been avoided if she had simply told father about the phone and its limitations on internet usage.

¶ 9. Following a hearing in July 2011, the court entered a twenty-five page order which clarified and modified parent-child contact. The court found that mother placed her needs ahead of the best interests of daughter, engaged in selfish and unreasonable behavior, has been patently unreasonable, has had "no insight whatsoever" as to why her behavior has caused daughter stress, and has failed to gain insight "as to the devastating impact of her behavior." The court also found that father attempted to relieve daughter's stress and that his "good basic parenting" has allowed daughter to have a "consistent, stable routine." The court found a change in circumstances because mother's harmful behavior had not lessened, as anticipated by the court's July 2010 order. Turning to the best-interests analysis, the court found that daughter's emotional development would be harmed if she spent the whole summer with mother. Thus, the court set forth a specific contact schedule and limited mother's summertime contact to approximately one month.

¶ 10. Mother appeals, arguing that: (1) the court exceeded its jurisdiction and violated her right to due process by issuing an order limiting her summertime contact with daughter insofar as she was never notified that summertime contact would be at issue; (2) father failed to make an adequate showing that there was a real, substantial, and unanticipated change in material circumstances to modify the previous custody order; and (3) the court failed to consider the best-interests factors in further limiting her contact with daughter.

¶ 11. Mother argues that the motions before the court referred exclusively to contact in Missouri, not summertime con-

tact, and therefore she had no notice that the court would consider modifying her summertime contact.

¶ 12. Mother claimed that there was a change in circumstances with respect to parent-child contact in her October 2010 motion. Mother requested in pertinent part "clarification regarding the parent-child contact schedule for this school year and for the future," that a cell phone be given to daughter, that father pay daughter's travel expenses, that she have a blocks of time with daughter in Missouri, that she be given specified periods of contact time from October 2010 to May 2011, and that she be able to travel internationally with daughter in the summer. In March 2011, the court characterized mother's motion as a motion for "enforcement and clarification/modification of . . . parental rights," and said it would set all pending motions for a full-day hearing.

¶ 13. Father's April 2011 motion requested an order precluding mother from traveling to Missouri unannounced, precluding mother from contacting daughter should mother travel to Missouri, prohibiting her from interfering with daughter's flights, requiring communication with father on time spent in Vermont, and "[a]ll other and further relief which the Court deems just." At the start of the hearing, father's attorney stated that the issue was the "visitation schedule in Missouri and — and other visitation." Mother's attorney then stated that "the primary issue is how many days is [mother] going to spend with [daughter] in Missouri and clarifying contact issues," and the court said, "I agree with you."

¶ 14. The parties' motions clearly contemplated a change in parent-child contact, as the court recognized. Both parties pleaded the existence of a change in circumstances; mother's own motion raised the issue of summertime contact, and father's motion argued for limitations on mother's contact. Importantly, mother argued below that there was a change in

circumstances because the school vacation schedules in Missouri and Vermont conflicted, and also because she alleged that father engaged in obstructionist behavior regarding parent-child contact. Thus, her argument that she had no notice fails. A request to open inquiry into one aspect of parent-child contact opens for inquiry the entire contact schedule, since it implicates the best interests of the child. Parent-child contact provisions do not stand alone, but are inextricably linked to create a visitation scheme. Cf. *Cleverly v. Cleverly*, 151 Vt. 351, 355-56, 561 A.2d 99, 102 (1989) (characterizing parent-child contact schedule as a "pattern of visitation"). Thus, mother cannot claim a change in circumstances and ask for what amounts to a modification of visitation, and then complain when the court, in its discretion, considers the whole of the contact schedule.

¶ 15. Mother also argues that the court's finding of a real, substantial, and unanticipated change in circumstances was based on speculation, and that there have been positive changes in the parties' relationship. She also argues that the case should be remanded for a clarifying order because the court erroneously interpreted the July 2010 order when it suggested that the court previously changed custody to reduce mother's influence over daughter and to reduce mother's contact with daughter.

¶ 16. Because mother pled a change of circumstances below, she cannot now complain that the court so found. Cf. *P.F. Jurgs & Co. v. O'Brien*, 160 Vt. 294, 303, 629 A.2d 325, 331 (1993) (noting that, where party argued below that contract was ambiguous, he "can hardly complain" on appeal that court admitted extrinsic evidence to aid in contract construction). We do, however, address mother's contention that the court erroneously interpreted the July 2010 order. We conclude that mother is incorrect, and that the court properly interpreted the order as

awarding father physical parental rights and responsibilities because it was in daughter's best interests. In July 2010, the court concluded that daughter would have the "best chance to succeed in school, and to develop a healthy self-confidence and autonomy as her own person," and that she would maintain relationships with all her family members, if she moved to Missouri with father. Here, the court interpreted the order in part as meaning that daughter would develop more self-confidence as a result of being physically separated from mother, due to mother's ongoing pattern of smothering behavior. This interpretation is not erroneous, since the July 2010 order contemplated that daughter would thrive, and the transfer of custody was in daughter's best interests.

¶ 17. Mother's final argument is that the court's findings do not support its conclusion that limiting mother's summertime contact with daughter is in daughter's best interests. In reviewing a decision regarding parent-child contact, we accord the court substantial deference. "[W]e do not disturb findings of fact unless they are clearly erroneous, and we uphold the court's legal conclusions if they are supported by the findings." *DeSantis v. Pegues*, 2011 VT 114, ¶ 26, 190 Vt. 457, 35 A.3d 152. We view the findings in the light most favorable to the prevailing party, and only reverse if the court exercised its discretion "upon unfounded considerations or to an extent clearly unreasonable upon the facts presented." *Id.* (quotation omitted).

¶ 18. When asked on direct examination whether he had a request with respect to changing summertime contact before the court, father testified:

> I struggle — I have struggled for days and days and days trying to figure out how best to handle this, and just like the same struggle with weighing the

impact to [daughter] of not seeing her mom versus the impact short-term and long-term, and I don't — that ten weeks is about what the summer is, about — it's about 75 days or so that she's in Vermont. I — I believe that that length of time negatively impacts my relationship to the point where if — if — perhaps it's not addressed that I will — I believe in — at some point I'm going to lose contact with [daughter] completely if something doesn't change.

¶ 19. As always, the best interests of the child are paramount. The court, correctly focusing on daughter's best interests, concluded that spending the entire summer with mother, with no opportunity for father to take a summer vacation with daughter, was not in daughter's best interests. Assuming the applicability of the best-interests factors contained in 15 V.S.A. § 665, the court's analysis is supported. Although the court did not explicitly go through the factors, it clearly considered the relevant ones in its decision. Specifically, looking at the order as a whole, the court considered § 665(b)(1), the relationship of the child with each parent and the ability and disposition of each parent to provide the child with love, affection, and guidance, and § 665(b)(3), the ability and disposition of each parent to meet the child's present and future developmental needs.

¶ 20. Father's testimony indicated that daughter's best interests would be served by having physical contact with both parents over the summer, as opposed to mother only. He testified that mother's visits were detrimental to daughter, that mother's interactions were perilous and disingenuous, and that he does not have telephone or Skype contact with daughter when she is away without "pressure and intensity," stating that mother often emails him with a recap of the conversation and why it has made daughter uncomfortable. This evidence supports the court's findings about mother's unreasonableness and lack of insight, and father's efforts to minimize daughter's stress, which in turn support the conclusion that daughter's best interests would be served by limiting mother's summertime contact.

*Affirmed.*