2014 VT 46

## Lisa Patnode v. Garrison Urette

[98 A.3d 787]

No. 13-179

Present: **Reiber, C.J., Dooley, Skoglund and Robinson, JJ., and Crawford, Supr. J., Specially Assigned**

Opinion Filed May 2, 2014

*Mary G. Kirkpatrick* of *Kirkpatrick & Goldsborough, PLLC*, South Burlington, for Plaintiff-Appellant.

*Cynthia L. Broadfoot, Broadfoot, Attorneys at Law*, Burlington, for Defendant-Appellee.

¶ 1. **Skoglund, J.** This appeal is the latest iteration of a long and difficult dispute between two parents formerly in a relationship. Following the superior court's amendment of a parent-child contact order, and in response to a child support order remanded to the magistrate by the superior court, appellant mother seeks to overturn the superior court's amendment and raises a number of issues with both the superior court and the magistrate's treatment of father's income for child support purposes. We affirm the

superior court's amended parent-child contact order and dismiss mother's appeal of issues regarding the child support order.

¶ 2. Mother and father were in a long-distance relationship for several years, throughout which mother lived in Vermont and father in Florida, where they continue to reside at the time of this appeal. In 2006, the parties had a child together. Although they never lived together as a family, parents continued taking regular trips with the child to visit each other until 2010, when they ended their relationship and mother filed a parentage action.

¶ 3. The superior court issued parental rights and responsibilities (PRR) and parent-child contact (PCC) orders in 2011, awarding mother sole physical and legal parental rights and responsibilities, and father significant parent-child contact. During the school year, father was entitled to ten days with the child each month, all long weekends, and every other two-week block in the summer. All school vacations and holidays were to be shared on an alternating basis, and the combination of long weekends, ten-day periods and vacations were capped so as not to exceed fourteen days with father at a time. Mother appealed the PCC order to this Court, and we affirmed.

¶ 4. In the wake of that affirmance, several issues arose between the parties regarding the child's school vacations and travel with father. Following a flurry of motions from both parties to modify, clarify, or enforce the PCC order, the superior court issued an amended order in April of 2013, which mother now appeals. The amendment was in direct response to a motion to clarify and enforce filed by father, which raised two particular issues: (1) whether father could take the child out-of-state with him on travel, and (2) whether the child's school vacation break in April superseded father's regular monthly allotment of parent-child contact. In response to these issues, the amended PCC order instituted two changes: first, that father provide mother two-weeks' notice of his plans to travel outside of Vermont with the child; and second, that during months where mother has the child during a school holiday, father may alter the beginning and end date of his ten-day contact period so as not to overlap with mother's holiday. Mother now contends that these changes are modifications to the PCC order, which the superior court erred in granting without first finding that a substantial and unanticipated change in circumstances had occurred.

¶ 5. When reviewing the family division's ruling on parent-child contact, we afford substantial deference to the court's decision. *Chickanosky v. Chickanosky*, 2012 VT 52, ¶ 17, 192 Vt. 627, 54 A.3d 162 (mem.). "Granting, modifying, or denying visitation is within the discretion of the trial court and will not be reversed unless its discretion was exercised upon unfounded considerations or to an extent clearly unreasonable upon the facts presented." *Gabriel v. Pritchard*, 173 Vt. 452, 454, 788 A.2d 1, 5 (2001) (mem.) (quotation omitted). Our substantial reliance on the trial court's determinations is a result of the court's unique position as the trier of fact to evaluate the credibility of witnesses and weigh evidence in the "highly fact-intensive" context of parental custody and visitation rights. *Miller-Jenkins v. Miller-Jenkins*, 2010 VT 98, ¶ 11, 189 Vt. 518, 12 A.3d 768 (mem.).

¶ 6. ▉ Here, mother objects to the amended PCC order on the grounds that it effected three significant modifications to the standing PCC order for which the trial court failed to find that a substantial and unanticipated change of circumstances had occurred that justified modifying the order. According to mother, the amended order allows father out-of-state travel with the child where it was not permitted before — thereby increasing mother's contribution to travel costs — and institutes a modified schedule for father's visitations. We disagree with mother's characterization of the contents of the amended order as modifications; rather, we view them as clarifications to the order which the superior court was authorized to make. *DeSantis v. Pegues*, 2011 VT 114, ¶ 26, 190 Vt. 457, 35 A.3d 152 (reiterating that "[d]ecisions regarding the granting, modifying or denying of parent-child contact lie within the discretion of the family court"); *Cleverly v. Cleverly*, 151 Vt. 351, 355, 561 A.2d 99, 102 (1989) ("The pattern of [parental] visitation adopted is within the discretion of the trial court . . . .").

¶ 7. ▉ The first purported change mother takes issue with is father's ability to travel with the child outside of Vermont during the school year. Mother argues that father never possessed this right before the amended order based on a "universal understanding" that father's contact with child must take place within Vermont. Mother's foundation for this understanding is one line from one day of the PCC hearing where the superior court judge was describing father's visitation rights and stated that "as far as

monthly, one week in Vermont or in Vermont each month during school, September, October, November, December, and so on." The judge clarified her words at a later hearing, stating that she "would have no reason to say, '[b]e in Vermont on a long weekend,' " and "wouldn't have said that long weekends [during the school year] need to be in Vermont, because it would seem to be pointless." In light of these clarifying statements, there is no question that during the hearing the court did not intend to confine father's visitation rights to Vermont.

¶ 8. In furtherance of her argument that father was never allowed to take the child out-of-state, mother also points to a special order father obtained from the superior court in 2012, allowing him to take the child to Florida over a long weekend. However, while the superior court did in fact grant father permission to take the child to Florida "for this special occasion/ event," it was in response to a motion for a protective order and emergency hearing filed by mother in an attempt to bar father from traveling outside of Vermont with the child. Considering the particular circumstances under which permission to travel was granted — in response to mother's preemptive attempt to bar out-of-state travel — the special order bears little weight on whether the original PCC order allowed for out-of-state travel with the child.

¶ 9. The amended order itself contains the following directive: "[t]he notice requirement of Paragraph 8 shall be amended to require [father] to provide two weeks' advance notice to [mother] of the travel plans whenever he plans to travel outside of Vermont on long weekends with [child]." In turn, paragraph 8 of the original PCC order states that:

> Both parties shall give the other notice of all travel plans with the child and shall provide contact information before taking any trips with the child. Both parents shall cooperate with obtaining a passport for the child and then the child's passport shall travel with the child so that she can easily [ ] travel with her parents.

Considering this provision of the original PCC order and the language used by the superior court in the amended order, the only alteration to the order was to give a specific notice timeframe of fourteen days.

¶ 10. This is a clarification; it does not change the terms of the PCC order in any way as father was mandated to give notice in

the original order and is likewise mandated to give notice by the amended order. Only the *amount* of notice has changed, and the difference is from no specified timeframe to a clearly delineated one — which is, in essence, a clarification of the previously ordered timeframe. Likewise, we see no modification present in the amended order's mention of father "travel[ing] outside of Vermont on long weekends with [child]." The PCC order explicitly anticipated father traveling with the child outside of Vermont by ordering parents to cooperate in obtaining a passport by which the child could easily travel "with her parents," and it contains no mention of father's visits with the child during the school year being confined to Vermont state lines. Mother's argument that father has been awarded a visitation right he did not have under the original PCC mischaracterizes the amended order.

¶ 11. Similarly, mother's assertions that the amended order modifies the terms of both her obligation to pay for part of father's travel with the child and of father's visitation schedule are without merit. First, the amended order makes no mention whatsoever of the requirement that mother pay for father's out-of-state travel with the child. Mother's argument is entirely based on the effect of father's ability to travel out-of-state, which mother presumes to be increased travel and therefore increased travel costs to her. However, as explained above, the amended order did not award father any such right; his ability to travel out-of-state with the child on long weekends was initially established in the language of the original PCC order. As there was no modification in the amended order with respect to that issue, there is necessarily no modification for the travel costs, particularly as the order makes no mention of such costs. Mother's claim that her payment responsibilities are increased by the amended order thus fails. Furthermore, father has conceded that mother is not expected to contribute to out-of-state trips father takes with the child during his allotted parent-child time, and therefore mother should experience no additional travel costs beyond what she already pays.

¶ 12. Mother's third and final argument that the order has been modified — that father's visitation schedule is significantly changed by the amended order — also fails. The court merely clarified how the existing PCC order terms should be met in months where mother's allotted vacation time conflicts with the ten days and long-weekend holidays that father is entitled to.

Contrary to mother's assertions, the superior court did not guarantee father fourteen days of contact every month, it only clarified how both parents' allotted time was to be accommodated in months where father was entitled to fourteen days that conflicted with mother's time. It bears emphasizing that the superior court did not in any way alter the amount of time that each parent was awarded with the child under the PCC order; the only "change" was to allow father to begin his ten-day period on a different day than usual so that both parents might have their allotted time with the child, and that amendment is strictly limited to months when mother is scheduled to have the child during a school vacation or holiday.

¶ 13. If, as mother argues, an adjustment of this nature were a modification, then the family division would lose its ability to clarify existing orders. Where the inherent purpose of an amendment to an existing order is not to change the terms of the original order, but to help the parties meet the original terms, it is well within the court's discretion to view such alterations as clarifying rather than modifying. When a conflict arises from the terms of an order, and the family division is asked by a party to clarify its intent for how those terms should operate, an addendum which does not alter the terms is not necessarily a modification but rather a clarification of the original order. See The American Heritage College Dictionary 258, 877 (3d ed. 1993) (defining "clarify" as "[t]o make clear or easier to understand; elucidate" and "modify" as "[t]o change in form or character; alter"); see also Perry v. Perry, 24 A.3d 1269, 1273 (Conn. App. Ct. 2011) (holding that changes to parental visitation order were clarifications, not modifications, where original order contained ambiguity the court had authority to correct, stating "the purpose of a clarification is to take a prior statement, decision or order and make it easier to understand"). As the court has the power to grant, modify or deny parent-child visitation rights, it is only logical that by extension it also has the power to clarify its own order regarding such rights. Gabriel, 173 Vt. at 454, 788 A.2d at 5. We therefore uphold the court's amended PCC order, finding no error in the court's clarification of terms in the standing PCC order.

¶ 14. Finally, we address mother's concerns with the treatment of father's income for purposes of calculating child-support. During parents' dispute over the terms of the PCC, a second dispute

developed regarding father's income and the child support terms set by the family division magistrate after three days of hearings. Both parties appealed aspects of the resulting support order, mother raising ten issues regarding the calculation of father's income and father cross-appealing on six issues with the same calculations. In February 2013, the superior court affirmed the magistrate's rulings on all ten of mother's issues, but reversed and remanded several aspects of the magistrate's order regarding imputed income to father and a redundancy in arrearage calculations. Mother attempted to appeal from that decision to this Court, but subsequently withdrew that appeal. The magistrate then issued a new decision in April 2013 consistent with the superior court appeal order.

¶ 15. Although not addressed by either side, the procedural history of this case reveals that the issues mother raises regarding child support are not properly before this Court. Mother is appealing the superior court's decision and the magistrate's remanded order following the superior court's directive, but there is no indication in the record that mother ever appealed the magistrate's order on remand to the superior court before commencing her appeal of the same with this Court.

¶ 16. ■ Section 465 of Title 4 directs that "[a]n appeal from a decision of a magistrate shall be on the record to the family division of the superior court." 4 V.S.A. § 465. Likewise, Vermont Rule for Family Proceedings 8(g)(1), which concerns appeals of magistrate proceedings, states that "[t]he appellate jurisdiction of the Family Division shall be invoked in the manner and subject to the conditions provided in the Vermont Rules of Appellate Procedure." Despite the complex procedural history of this case, the relevant statute and procedural rules do not allow an appeal of the magistrate's remanded order directly to this Court without first appealing to the superior court.* *Williams v. Williams*, 158 Vt. 574, 577, 613 A.2d 200, 202 (1992) ("Any order of the magis-

---

* We recognize that mother seeks to appeal the superior court order and sees a return to that court as useless because it has clearly decided the issues. Mother tried to make such an appeal to this Court but withdrew it, apparently because it was interlocutory. She could have sought an interlocutory appeal by permission, but did not do so. See V.R.A.P. 5(b) (permitting appeals from interlocutory rulings where it may materially advance termination of litigation). In the absence of such an appeal, she is required by the statute to resubmit the issues to the superior court, even if that step may appear to be futile.

trate is appealable under 4 V.S.A. § 465 to the family court, not to this Court."); see also *In re R.L.*, 163 Vt. 168, 172, 657 A.2d 180, 183 (1995) ("The family court's only appellate jurisdiction authorized by statute is over decisions from the family court magistrate.").

¶ 17. ■ ■ Until this issue is properly decided by and appealed from the family division, we cannot address the issues mother raises with the child support order — either the superior court's February 2013 order or the magistrate's subsequent April 2013 order on remand. Again, the magistrate's order has not been properly appealed through the superior court, and the superior court order is not a final appealable order because it remanded the issue of child support back to the magistrate. *In re Burlington Bagel Bakery, Inc.*, 150 Vt. 20, 21, 549 A.2d 1044, 1045 (1988) ("To be final and appealable an order must end litigation on the merits or conclusively determine the rights of the parties, leaving nothing for the court to do but execute the judgment." (quotation omitted)); see also *Mansfield v. Mansfield*, No. 2001-129, 2001 WL 36132452, at *2 (Vt. Dec. 21, 2001) (nonprecedential 3-Justice mem.) (rejecting contention that mother failed to timely appeal child support order where order was "not an appealable final judgment because it remanded the matter to the magistrate for further proceedings to determine father's revised child support obligation"). We do, however, construe mother's appeal to this Court as a notice of appeal of the April 2013 child support order to the superior court. See V.R.A.P. 4(a)(5) (providing that when notice of appeal is mistakenly filed in the Supreme Court "[t]he notice is considered filed in the superior court on the date so noted"). Mother's appeal of issues regarding the child support order is therefore dismissed.

*Mother's appeal of the child support order is dismissed with instructions for hearing by the family division. The court's amended order on parent-child contact is affirmed.*