2015 VT 70

# Lisa Patnode v. Garrison Urette

[124 A.3d 430]

No. 14-268

Present: **Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.**

Opinion Filed May 8, 2015

*Mary G. Kirkpatrick* and *Jennifer E. Agnew* of *Kirkpatrick & Goldsborough, PLLC*, South Burlington, for Plaintiff-Appellant.

*Cynthia L. Broadfoot* of *Broadfoot, Attorneys at Law*, Burlington, for Defendant-Appellee.

¶ 1. **Skoglund, J.** The parties were formerly in a relationship and are parents to a girl born in April 2006. After their break-up, mother filed this parentage action in 2010 and the parties have been engaged in litigation regarding parent-child contact and child support ever since. In this appeal, mother argues that the family court erred in determining the amount of father's income for purposes of calculating child support. Mother argues that the court should have imputed income to father from property sales in 2008 and 2010 made by a business in which father holds an interest. We affirm.

¶ 2. The question raised in this appeal regarding father's income has been the subject of prior litigation between the parties.[1] After the family court granted mother sole legal and physical rights and responsibilities for the daughter in May 2011, the magistrate held a hearing on child support in February and March 2012. In a written order, the magistrate found the following. During the parties' relationship, mother lived primarily in Vermont and father resided in Florida. After the break-up, father continued to reside in Florida. Father is self-employed and works for entities owned by him and members of his family. The family business, Tampa Palms Professional Center, is a real estate development business that consists of two entities, and has extensive real estate holdings. At the time of the final hearing on child support, father owned 45% of these joint entities. In 2008 and 2010, there were two sales of real property by eminent domain that created a potential for capital-gain income to Tampa Palms. The 2008 sale resulted in a capital gain of $6,363,050 for Tampa Palms, and father was assessed a gain of $1,729,614 on his taxes for that year. Tampa Palms distributed enough money to father to cover his tax liability from this gain. The rest of the proceeds from the sale were used by the company to make payments on notes held by banks on the property. These were contractually-mandated debt repayments. The 2010 sale by eminent domain did not result in a taxable capital gain because the proceeds were used to acquire another property in a like-kind exchange.

¶ 3. In calculating father's income, the magistrate made several rulings regarding father's interest in Tampa Palms. The magistrate declined mother's request to impute income to father based on the book value of the assets held by Tampa Palms, holding that the assets were income-producing business assets that were not easily liquidated. Both parties' experts testified that the book value of the company's assets was not an appropriate measure of the value of the business. The magistrate also noted that there

---

[1] This case has reached this Court on two prior occasions. In the first appeal, mother challenged the parent-child contact provisions of the parentage order, and this Court affirmed. See *Patnode v. Urette (Patnode I)*, No. 2011-315, 2012 WL 7652791 (Vt. Feb. 2, 2012) (unpub. mem.), https://www.vermontjudiciary.org/LC/unpublishedeo.aspx. Following an order responding to motions to modify or clarify parent-child contact, mother appealed, and this Court again affirmed. See *Patnode v. Urette (Patnode II)*, 2014 VT 46, 196 Vt. 416, 98 A.3d 787. In that appeal, mother also attempted to appeal a magistrate order on child support, but this Court dismissed that portion of the appeal. *Id.* ¶¶ 15-16.

was no evidence of the value of father's ownership interest in Tampa Palms. The magistrate explained that in addition to not having an accurate picture of the company's value, the value of father's interest was difficult to determine because as a minority owner, he did not control distributions or sales.

¶ 4. As to the proceeds generated from the eminent domain sales, the magistrate treated the two sales differently. The magistrate imputed income to father for the 2008 sale, but concluded that no income could be imputed from the 2010 eminent domain action because there was no gain realized by the company or disbursement made to father. For the 2008 sale, the magistrate noted that it was remote in time from the child-support proceeding, but concluded it could be included as income insofar as it increased father's income-generation ability. The magistrate concluded that the 2008 sale benefitted father by increasing his equity in his ownership interest of Tampa Palms and imputed annual income to father of $48,429 based on the average long-term interest rate for treasury securities as applied to the amount of the 2008 capital gain income. This order issued in July 2012.

¶ 5. Both parties appealed the child support order to the family division on several grounds, including the calculation of father's income. See V.R.F.P. 8(g) (setting forth process for appeals from magistrate). The family division concluded that the magistrate erred in how it treated the sale proceeds from the 2008 eminent domain transaction, and affirmed the decision related to the 2010 sale. The court explained that the 2008 sale was a one-time event, occurring prior to the filing of the case, and not recurring income. To the extent the sale produced funds that were reinvested, the court considered this an asset, which was income-producing, and therefore under the statute could not be used to impute income. The court reversed and remanded to the magistrate. On remand, the parties agreed that no further evidentiary hearing was necessary, and the magistrate recalculated the child support payment without imputing income to father from the 2008 capital gain realized by Tampa Palms. Mother appealed, and the family division affirmed.[2] Mother then filed an appeal with this Court.

---

[2] Mother initially sought to appeal directly from the magistrate's order, but this Court dismissed the appeal as improper, explaining that a magistrate order must first be appealed to the family division of the superior court. *Patnode II*, 2014 VT 46, ¶¶ 16-17.

¶ 6. Our review in this case is similar to that of the family division; it is based on the record before the magistrate. See 4 V.S.A. § 465 (allowing appeal of magistrate decision "on the record" to family division); V.R.F.P. 8(g)(4) (stating that appeals to family division are "on the record"); *Miller v. Miller*, 2005 VT 89, ¶ 18, 178 Vt. 273, 882 A.2d 1196 (stating that review of magistrate's decision is based on record before magistrate). We give deference to the magistrate's factual findings, and will affirm "if the conclusions of law are supported by the findings." *Tetreault v. Coon*, 167 Vt. 396, 399-400, 708 A.2d 571, 574 (1998). We review de novo the family court's conclusions of law. *Coyle v. Coyle*, 2007 VT 21, ¶ 5, 181 Vt. 583, 925 A.2d 996 (mem.).

¶ 7. On appeal, mother argues that both the 2008 and 2010 sales should have resulted in imputed income to father. Mother contends that the family division misconstrued the findings of the magistrate regarding the 2008 sale. According to mother, the magistrate found that the proceeds of the sale were income, and the family court erred by not deferring to the magistrate's finding on this issue and instead treating the proceeds as an asset. Although mother frames this as a factual question, whether the 2008 sale meets the statutory definition of gross income for purposes of calculating child support is a question of law that we review de novo. See *Miller*, 2005 VT 89, ¶ 10 (stating that construction of child-support statute is question of law); *Cantin v. Young*, 171 Vt. 659, 661, 770 A.2d 449, 451 (2000) (mem.) (reviewing de novo question of whether disability payments are gross income under statute). "In construing a statute, our paramount goal is to discern and implement the intent of the Legislature." *Miller*, 2005 VT 89, ¶ 14. To determine this intent we "look to the whole statutory scheme and the policies behind it where necessary." *Cantin*, 171 Vt. at 661, 770 A.2d at 451.

¶ 8. Here, the statute directs that child support should be calculated based on the parties' "available income." 15 V.S.A. § 654. Available income is defined as gross income less certain expenditures. *Id.* § 653(1). Gross income includes monies regularly received from a variety of sources such as "salaries, wages, commissions, royalties, bonuses, dividends, severance pay, pensions, interest, trust income, annuities, [and] capital gains," among others. *Id.* § 653(5)(A)(i). It also includes one-time receipts of money such as gifts and prizes. *Id.*

¶ 9. The issue in this case is whether the capital gain realized by the entity in which father holds an interest was income to

father within the meaning of the statutory definition. We need not reach that particular question because we conclude that whether or not the sale proceeds were income in 2008, the receipt was too remote in time to be included as income at the time this parentage action was filed.

¶ 10. ██ ██ In calculating child support, the court must rely on income amounts that are current to the child support determination. Although this principle is not specifically set forth in the statute, it is implied. The purposes and language of the child-support statutes reflect an intent that the income used be closely correlated to the time of calculation. The statute states that child support orders should "reflect the true costs of raising children and approximate insofar as possible the standard of living the child would have enjoyed had the family remained intact." 15 V.S.A. § 650. To implement this, the statute directs that child support be based on "available" income, which is defined as gross income less some expenses. *Id.* §§ 653(1), 654. Gross income is defined as "actual gross income of a parent." *Id.* § 653(5). Income therefore is meant to reflect each parent's actual capacity to pay child support. Both the terms "available" and "actual" indicate that the Legislature intended for the child-support calculation to be based on income that is actually being received by the parent at that point in time. To use income remote in time would not promote the legislative policy of approximating the standard of living that would have been experienced by the family if intact and would not be "actual" or "available" income.

¶ 11. ██ Here, the earliest that any child-support obligation could be imposed would be from the date the parentage action was filed in May 2010. See *Bergman v. Marker*, 2007 VT 139, ¶ 21, 183 Vt. 68, 944 A.2d 265 (explaining that child support in divorce action can be granted retroactive to date divorce petition filed). Therefore, we need not determine whether father received a benefit from the 2008 sale that could be considered income for child-support purposes because, even if it was income, any proceeds realized from the 2008 sale could not be directly attributed to father as income for purposes of calculating child support two years later in 2010.

¶ 12. ██ This holding does not preclude evidence of a parent's income history from being used for other purposes. For example, a parent's historical income could be relevant in determining

whether to impute income to a parent who is voluntarily under-employed or unemployed. See *Tetreault*, 167 Vt. at 402, 708 A.2d at 576 (explaining that parent's employment history is among factors to consider in deciding whether to impute income based on parent's voluntary underemployment or unemployment). It could also. be important in determining a parent's income if the income fluctuated significantly from year to year or was difficult to determine. See *Golden v. Cooper-Ellis*, 2007 VT 15, ¶ 49, 181 Vt. 359, 924 A.2d 19 (affirming court's calculation of husband's income for maintenance and child support calculation based on average of husband's annual bonuses from previous four years). Here, how-ever, mother does not seek to use the historic data for these purposes.

¶ 13. ■ To the extent the proceeds were reinvested in the company and converted to assets, there was no basis under the statute to impute prospective income from the proceeds because they were invested in income-producing assets, the income from which was already part of father's gross income. The magistrate recognized the time-relevance problem of the 2008 sale, explaining that the gain when viewed as income could be "disregarded by the court as being irrelevant to [father's] current income situation" since it was "an event remote in time to the current action." Nonetheless, the magistrate imputed income to father, reasoning that once the money had been invested, it could produce additional income. When viewed in this light, the money is essentially converted from income into an asset. As an asset, it was subject to the statutory definition of gross income, which states: "Income at the current rate for long-term U.S. Treasury Bills shall be imputed to nonincome producing assets . . . ." 15 V.S.A. § 653(5)(A)(i). The magistrate found that the assets of Tampa Palms were income-producing, generating rents, capital gains, interest, and dividends. Thus, the family division correctly deter-mined that as a matter of law no income could be imputed from those assets. See *Clark v. Clark*, 172 Vt. 351, 354, 779 A.2d 42, 46 (2001) (rejecting request to impute income to mother from income-producing assets because statute applies to only nonincome-producing assets). Therefore, whether viewed as income or assets, the 2008 sale did not generate income that could be imputed to father for purposes of calculating child support in 2010.

¶ 14. Next, mother argues that the family division erred by not imputing income to father from the 2010 eminent domain sale.

The magistrate found that the transaction in 2010 resulted in no taxable gain to Tampa Palms or to father because the proceeds were reinvested in a similar property. For this reason, magistrate did not impute income to father from this sale, and the family division affirmed.

¶ 15. ■ On appeal, mother argues that it was error not to impute income to father from this sale because the transaction gave father a greater asset base. There was no error. The magistrate found based on the evidence that father actually received no distribution from the 2010 sale. Father did not experience an increase in the money available for use "for his personal living expenses," and if the family had remained intact there would not have been additional money to enhance "the children's standard of living." See *C.D. v. N.M.*, 160 Vt. 495, 502, 631 A.2d 848, 852 (1993) (affirming trial court's decision not to count as income money distributed to father by his company to purchase property because funds were not to enrich father and could not be used for his living expenses). To the extent that the 2010 sale increased father's equity in the Tampa Palms, as explained above, there was no basis under the statute to impute income to father from the increase in value of those assets because they were income producing. Therefore, no income can be imputed to father from the 2010 sale.

*Affirmed.*