NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 107

No. 2017-032

| | |
|---|---|
| Lisa Patnode | Supreme Court |
| | |
| v. | On Appeal from<br>Superior Court, Chittenden Unit,<br>Family Division |
| | |
| Garrison Urette | September Term, 2017 |

Barry D. Peterson, Acting J., Specially Assigned

Lisa E. Patnode, Pro Se, South Burlington, Plaintiff-Appellee.

Cynthia L. Broadfoot of Broadfoot, Attorneys at Law, Burlington, for Defendant-Appellant.

PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.

¶ 1. **SKOGLUND, J.** Father, Garisson Urette, appeals the superior court's order amending the parent-child contact order. We find that the court improperly modified the original parent-child contact order without the necessary finding of a real, substantial, and unanticipated change in circumstances. Additionally, we find that granting mother, Lisa Patnode, sole authority to sign releases and waivers of liability was an improper infringement on father's parental rights. Accordingly, we reverse.

¶ 2. In July 2011, the superior court issued the original order regarding parental rights and responsibilities and parent-child contact (original PCC order), which granted mother physical

and legal parental rights and responsibilities, subject to father's substantial parent-child contact.[1]

Since that original order, the parties have filed over seventy motions to amend or clarify the orders and have appealed to this Court six times. The superior court issued an amended order regarding parent-child contact (amended 2013 PCC order) in April 2013. This appeal follows mother's September 2016 motion to the superior court to clarify (1) father's legal right to bring the child on private planes, jets, or helicopters without notice and consent of mother, (2) father's ability to sign the child up for activities, and (3) father's ability to sign parental consent forms and release of liability forms.[2]

¶ 3.     The superior court held a hearing on October 26, 2016. In response, the superior court issued a decision on mother's motions on November 15, 2016, in which it found that "[b]ased on the evidence presented . . . there has not been a real, substantial, and unanticipated change of circumstances since [the original PCC order] to support a modification of the parent child contact order . . . ." The court then issued the following orders: (1) if the child is with father in Vermont on Mother's Day, father's contact "shall be interrupted" by the child spending Mother's Day with mother; (2) mother has the sole authority to make decisions regarding the child's transportation and travel because mother has sole legal rights and responsibilities; and (3) mother has sole discretion to sign any releases or waivers of liability because she has sole legal rights and responsibilities. Father then filed a motion to amend the judgment and, on December 13, 2016, the superior court issued an entry order adding that mother shall not unreasonably withhold her consent for releases and waivers of liability. Father appeals all three orders as inappropriate modifications and infringements on his parental rights. Mother argues that the orders were proper.

---

[1]  Father has been granted approximately forty percent of the child's time.

[2]  Mother's motion requested several other clarifications that father does not challenge here, and thus we will not examine them.

¶ 4.     It is well established that this Court gives substantial deference when reviewing family division rulings on parent-child contact. Patnode v. Urette, 2014 VT 46, ¶ 5, 196 Vt. 416, 98 A.3d 787. "[W]e will not reverse the court's decision unless its discretion was exercised upon unfounded considerations or to an extent clearly unreasonable upon the facts presented." Groves v. Green, 2016 VT 106, ¶ 23, __ Vt. __, 154 A.3d 507 (quotation omitted). However, modification of a parental-rights-and-responsibilities order or a parent-child-contact order requires the superior court to undertake a two-part analysis. The court must first determine if there has been a "real, substantial and unanticipated change in circumstances." 15 V.S.A. 668(a). If this threshold condition is met, only then may the court move on to determine if changes to the orders would be in the best interest of the child and to make changes as it deems necessary. Id.; see also Siegel v. Misch, 2007 VT 116, ¶ 6, 182 Vt. 623, 939 A.2d 1023. Yet not all subsequent orders regarding a standing parental-rights-and-responsibilities order or a parent-child-contact order are considered modifications—an order may be a clarification that does not require the two-part analysis. See Patnode, 2014 VT 46, ¶ 13 ("Where the inherent purpose of an amendment to an existing order is not to change the terms of the original order, but to help the parties meet the original terms, it is well within the court's discretion to view such alterations as clarifying rather than modifying."). For example, in a previous appeal between these parents regarding the modification/clarification distinction, we held that "an addendum which does not alter the terms [of a PCC order] is not necessarily a modification but rather a clarification of the original order." Id.

¶ 5.     Here, the superior court made an unambiguous finding that there had been no "real, substantial, and unanticipated change in circumstances." However, instead of stopping at the unsatisfied threshold question, the court then went on to order two modifications to father's parent-child contact—one concerning Mother's Day and another concerning the child's travel arrangements.

3

¶ 6.     First, the court modified the PCC order regarding Mother's Day.  The original PCC order stated, "[i]f possible, the parties will arrange parent child contact so that the child spends Mother's Day with [mother] and Father's Day with [father]."  Mother's September 2016 motion to the superior court did not specifically raise the Mother's Day issue, but during the hearing on the motion, both parties discussed scheduling issues around Mother's Day and debated over how many Mother's Days mother had actually spent with child since the original PCC order.  Ultimately, the court found that mother spent "one or two" Mother's Days with the child but also found that "[b]ased on the evidence . . . , there has not been a real, substantial, and unanticipated change of circumstances."  The court then went on to, in their words, "supplement" the original PCC order, ordering that if the child is with father in Vermont on Mother's Day, "the contact shall be interrupted" so that the child can be with mother from ten o'clock in the morning until six o'clock in the evening.

¶ 7.     The court's order regarding Mother's Day was more than a mere clarification or supplement—it was a modification.  In a previous appeal between father and mother, we held that there was no modification because father's parent-child contact had not been increased and the change merely addressed an ambiguity in the issued PCC order.  Id. ¶ 13.  We further noted that "[i]t bears emphasizing that the superior court did not in any way alter the amount of time that each parent was awarded with the child under the PCC order."  Id. ¶ 12.

¶ 8.     Here, by changing the operative language from "if possible" to "shall," the superior court made a discretionary matter into an obligatory order, possibly depriving father of a day of his allotted time.  The original order's discretionary language made it clear that, if arrangements could not be made, father's parent-child contact would not be interrupted.  With the new order, there is no question that father's time with child will be interrupted if the child is in Vermont and with father, regardless of the ease of arrangements.  To modify a discretionary measure into a mandated reduction of father's assigned time, the court must find that there was some real,

4

substantial, and unanticipated change in circumstances. The court did not, and thus the modification was improper and we reverse.

¶ 9.     Second, the superior court modified the PCC order by granting mother the sole authority to make decisions as to transportation. The original PCC order stated that "[father] shall be responsible for making the travel arrangements and shall notify [mother] of the costs and provide documentation." The amended 2013 PCC order required father provide two weeks' notice to mother of travel plans whenever he intended to travel outside of Vermont. Subsequently, mother's September 2016 motion requested clarification from the court to reinforce that father must give mother two weeks' notice of all travel by any method of transportation other than an automobile and to further clarify that father did not have the legal right to take the child on privately hired transportation. In response to mother's motion, the superior court held that mother has "sole legal rights and responsibilities and therefore makes the decisions as to transportation" and that if, in the future, father desires to have the child use privately hired transportation, "he must first get the approval of [mother] who has sole discretion to sign any release or waivers of liability."

¶ 10.     This order was effectively a modification to the PCC order. The original PCC order granted father the right and responsibility to make travel arrangements for the child, with the requirement added by the amended 2013 PCC order that he inform mother of out-of-state travel plans two weeks in advance. Other than the notice requirement, there is nothing in either the original or the amended 2013 PCC order to limit father's ability to make travel arrangements for the child. The appealed order takes those rights and responsibilities away from father and places them with mother, without the requisite finding of a real, substantial, and unanticipated change in circumstances and in the face of a finding to the contrary. While father must notify mother in advance of out-of-state travel according to the amended 2013 PCC order, he has the right and responsibility to continue to make travel arrangements for the child in connection with the original

5

PCC until the court finds a sufficient change of circumstances to warrant a modification of the original and the amended 2013 PCC order.

¶ 11. Finally, the court erred in ordering that, because mother has sole legal parental rights and responsibilities, she "has sole authority to sign any releases or waivers of liability associated with [the child]'s activities, which shall not be unreasonably withheld" and that if mother does not approve of the activity, "she shall give [father] notice of her decision and the reason why she does not approve of the activity." Both aspects of this order are impermissible infringements on father's right to parent-child contact.

¶ 12. The superior court's determination that mother, as sole legal custodian, has the sole authority to sign releases or waivers of liability for the child to participate in extracurricular activities and to travel, regardless of during which parents' time the activity will occur, conflicts with this Court's previous holdings—it makes the assumption that the grant of sole legal and physical responsibility is absolute. This "ignores the legislative mandate that children should continue 'to have the opportunity for maximum continuing physical and emotional contact with both parents.' " Miller v. Smith, 2009 VT 120, ¶ 7, 187 Vt. 574, 989 A.2d 537 (mem.) (quoting 15 V.S.A. § 650); see also 15 V.S.A. § 670 (providing that the parent who has not been awarded parental rights and responsibilities still has the right to access "medical, dental, law enforcement and school records."); Gazo v. Gazo, 166 Vt. 434, 442-44, 697 A.2d 342, 347 (1997) (discussing legislative intent to preserve noncustodial parent's right to parent-child contact, free from unilateral restrictions from custodial parent). As we did in Miller, we reiterate that "[t]he court may impose conditions on visitation if clearly required by the child's best interests, which is not to suggest that the custodial parent can impose restrictions unilaterally." 2009 VT 120, ¶ 5. By granting mother the unilateral authority to veto activities for the child during father's time by withholding her signature, father's time with child becomes "little more than a babysitting function," which we warned against in Miller. Id. ¶ 7.

6

¶ 13.    In Miller, this Court affirmed that while the court can "provide blocks of time to each parent," it is up to the individual parent to determine, within reason, how they will spend their time with the child.  Id. ¶ 3.  In Miller, the facts were slightly different—the custodial parent desired to "establish routines and restrictions within [the] noncustodial parent's time at her whim." Id. ¶ 7.  However, the same rule applies.  Here, father, the noncustodial parent, does not desire to impose routines and restrictions upon mother's, the custodial parent's, time with the child.  Instead, father merely seeks to determine how he and the child spend their time together.  It is well within his rights, as a noncustodial parent who has been awarded substantial parent-child contact, to sign the child up for activities that take place on his time, in the best interest of the child.  Likewise, mother cannot control how father and child spend their parent-child contact by foreclosing these activities.

¶ 14.    Similarly, in Gazo, we held that a parent who had not been awarded parental rights and responsibilities still had the right to be involved in decision making, particularly regarding activities that took place on the parent's time with the child.  166 Vt. at 443, 697 A.2d at 347. There, the parent with legal and physical rights and responsibilities, argued that the requirement that she confer with the parent with parent-child contact "to reach a mutual agreement before making any major decisions" undercut her award of legal rights and responsibility for the children. Id. at 442, 697 A.2d at 346.  We held that "[t]he use of the word 'primarily' [in the statute] shows that the Legislature expected that some sharing of responsibilities . . . could be ordered."  Id. at 443, 697 A.2d at 347 (discussing 15 V.S.A. § 665(a), which provides that court "shall award parental rights and responsibilities primarily or solely to one parent").  Here, there is no indication that the superior court found it was in the best interest of the child that mother possess sole authority to make decisions about the child's activities.  Further, the superior court has not determined that father is incapable of making decisions with the best interest of the child in mind. Thus, father is entitled to make decisions regarding activities that occur during his parent-child

7

contact and has the authority to sign any necessary releases or waivers of liability required for these activities.

¶ 15. Further, granting mother veto power over activities by requiring her consent "which shall not be unreasonably withheld" places the court in the position of referee for every disagreement regarding what is an unreasonable or reasonable withholding. See Miller, 2009 VT 120, ¶ 3 (affirming that "the family court could not referee the details of how the child spent her time with father" and that "[t]he court had no ability or any role in deciding if [an activity was] better for the child than an afternoon spent at father's house"). Thus, if the superior court continues to find that father is a parent capable of making decisions with the safety and best interest of the child in mind—and there has been no evidence to the contrary—he has the right to make decisions regarding activities that occur during his parent-child contact and has the authority to sign any necessary releases or waivers of liability connected thereto.[3]

¶ 16. In conclusion, while father must continue to notify mother of travel with the child outside of Vermont in accordance with the amended 2013 PCC order, he shall retain the rights and responsibilities to make travel arrangements for the child and to sign releases and waivers of liability for activities that occur on his time. Additionally, the original PCC order shall remain in full force and effect regarding the scheduling on Mother's Day.

Reversed.

FOR THE COURT:

_____

Associate Justice

---

[3] However, also under Miller, the court may not require mother to bring the child to activities signed up for by father which take place on mother's time. 2009 VT 120, ¶ 7.